**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

MILLENNIUM HEALTH & FITNESS INC.,          Case No. _____
1160 SNIDER LN
ALLEN, TX 75002-8252                       Judge: _____
UNITED STATES

                Plaintiff,

v.                                         **COMPLAINT**

KATIE M. DOYLE,
2721 LAURELWOOD CT
BEAVERCREEK, OH 45431-8571

                Defendant.

**INTRODUCTION**

       This case is entirely about a former employee of Plaintiff, whose work performance record was below mediocre, nestling her way into a civilian adjunct job at a U.S. military installation in Ohio and abusing her position to exact retribution against Plaintiff Millennium Health & Fitness Inc. ("Millennium"). Defendant Katie M. Doyle's ("Defendant" behavior is so egregious as to take out her insecurities and prejudices against pregnant female, minority and more progressive lifestyle employees to disadvantage Millennium. Defendant, a civilian employee working at Wright-Patterson Air Force Base in Dayton, Ohio, brazenly, knowingly and intentionally exceeded the limits of her narrowly defined civilian supervisory authority. Defendant's purposeful harassment of and discrimination against Millennium employees was for malicious and actionable purposes -- interfering with Millennium's ability to perform on a United States government contract, undermining Millennium's ability to receive both an extension and renewal of the contract, damaging the exceptional and previously unblemished reputation of Millennium, and purposefully discriminating against Millennium employees based on sex and personal

circumstances. Everything alleged here against Defendant Doyle is unlawful conduct and actionable at law. Defendant's actions cause her to be responsible personally for Millennium's loss of $9,301,904.76 in revenue under Millennium's contract with the Air Force and associated reputational damage.

Millennium, as a Native American Woman Owned Small Business has sought diligently, from the company's inception in 1993, to develop positive working relationships with the Departments and Agencies of our federal government which contract with Millennium. Not once before has Millennium had similar issues to those that Millennium now raises in this Complaint, nor has Millennium ever before even complained to a Contracting Officer or other federal government supervisor about a contract's Contracting Officer's Representative or program manager. Defendant Doyle was the first, and the claims in this lawsuit arise out of Defendant Doyle's misusing her authority to impose retribution.

## **COMPLAINT**

Therefore, NOW COMES Plaintiff, Millennium Health & Fitness Inc. through its attorneys, Dickinson Wright PLLC, and states as follows for its claims against Katie M. Doyle.

## **PARTIES, JURISDICTION, AND VENUE**

1. Millennium Health & Fitness Inc. ("Millennium") is an Arizona registered Domestic For-Profit (Business) Corporation that has its principal place of business and headquarters in Texas.

2. Sherry K. Morton ("Mrs. Morton") is the sole constituent owner of Millennium and is a citizen of Texas.

3.     Millennium is a federal government contractor who currently provides the United States Air Force ("Air Force") with health and well-being services pursuant to the Air Force's Civilian Health Promotion Services ("CHPS") program.

4.     Katie M. Doyle ("Doyle" or "Defendant Doyle") is a civilian federal government employee working at Wright-Patterson Air Force Base in Dayton, Ohio.

5.     Doyle until recently served as both a Contracting Officer's Representative ("COR") and CHPS Government Program Co-Manager ("Government Program Manager") with these two jobs having overlapping oversight responsibility of Millennium's contract with the Department of the Air Force ("Air Force") at issue.  Doyle was recently terminated as a COR but remains a Government Program Manager.

6.     At no time relevant to this Complaint and at no time has Doyle ever served as an active duty member of any branch of the United States Military, including the Air Force.

7.     Doyle is a citizen of Ohio who resides in Beavercreek, Ohio.

8.     The amount in controversy in this matter is in excess of $75,000, exclusive of costs, interest, or attorneys' fees.

9.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because there is diversity of citizenship and the amount in controversy is in excess of $75,000.  Jurisdiction for Count IV is also based on 28 U.S.C. §§ 1332, 1343 and 42 U.S.C. §§ 1981, et seq.

10.     Venue is proper in this Court under 28 U.S.C. § 1391, as a substantial part of the events or omissions giving rise to Plaintiff's claims occurred at Wright-Patterson Air Force Base in Dayton, Ohio.

## STATEMENT OF FACTS

11.     Plaintiff Millennium employed Defendant Doyle from August 2015 until April 2020 as a Health Promotion Coordinator.  During her approximate 5-year employment with Millennium, at least part of Defendant Doyle's work supported Millennium's Bridge Contract with the Air Force.

12.     Defendant Doyle's job performance, while a Millennium employee, was at best mediocre and problem-ridden.

13.     Defendant Doyle's last day of employment with Millennium was April 24, 2020.

14.     In May 2020, Defendant Doyle began work as an Air Force civilian federal government employee at Wright-Patterson Air Force Base in Dayton, Ohio.  Her Government Program Manager job put her working in the immediately conflicted position of supervising and administering the precise bridge contract she had just worked on as a private sector independent contractor.

15.     In February 2021 Defendant Doyle became the COR overseeing Millennium, adding to her conflicted position of supervising a new contract of her former private sector independent contractor.

16.     Until such time as Defendant Doyle commenced her supervisory and administrative role without any relevant prior experience, there was not one criticism directed at Millennium's performance under the Bridge Contract and Contract FA800321F0004.

17.     Defendant Doyle's prior Millennium employment has impaired her ability to act impartially and in the best interest of the Government in overseeing Plaintiff Millennium's Contract FA800321F0004 with the Air Force.

18.     Among other things and without limitation, Defendant Doyle's unlawful and unethical behavior and actions that are entirely outside the scope of her civilian federal government employment and thus actionable at law against Defendant personally fall into the following five categories: 1. conflicts of interest; 2. harassment and inherently unlawful discriminatory behavior; 3. impermissible and excessive authority overreach; 4. refusal to treat Millennium fairly and with transparency, creating a toxic work environment impeding Millennium's abilities to recruit and retain staff; and 5. issuance of a retaliatory and harmful Cure Notice.

19.     On November 10, 2019, the Air Force initially awarded to Plaintiff Millennium a Bridge Contract and entered into its current contract ("Contract FA800321F0004") on February 1, 2021.

20.     Millennium's current Contract FA800321F0004 was for one year with two and one-half option years, and in the total aggregate is valued at approximately $30 million.

21.     Prior to the award to Millennium of Contract FA800321F0004, Millennium has performed successfully and without any complaint or problem on hundreds of United States government contracts on military installations over the past 30 years.

22.     The Air Force on December 2, 2022 provided Millennium with email correspondence and a letter stating that it was giving "preliminary notice of the Government's intent to extend [Millennium's Contract FA800321F0004] services for twelve (12) months."

23.     Subsequently, on December 30, 2022 the Air Force made a U-turn and provided Millennium with email correspondence and a letter stating its intent only to extend Millennium's contract for up to six more months, thereby canceling Millennium's contract within six months.

24.     In the intervening 28 days between the two communications that Millennium received from the Air Force, Millennium submitted two letters of its own to the Air Force's

Contracting Officer ("Contracting Officer") detailing ongoing express breaches of Defendant Doyle's authority and her grossly unprofessional conduct toward Millennium.

25.     On December 12, 2022, because of Defendant Doyle's egregious misconduct set forth below more fully, Millennium filed a formal Congressional Inquiry Letter and Request with Senator Cruz's office. During the month of December 2022, the Air Force, and likely also Defendant Doyle, appear to have become aware of Millennium's Congressional Inquiry action.

26.     Millennium, upon information and belief, asserts that the only events that could possibly have changed the Air Force's intent to extend Millennium's Contract FA800321F0004 services for a full year would have been the Air Force Government Program Office's notice of the amount of pressure and action that Millennium was taking to raise its well-founded concerns about Defendant Doyle and her interference with Millennium's contract performance.

27.     Further, Millennium, upon information and belief, asserts that in the month of December 2022, Defendant Doyle retaliated against Millennium by actively engaging her supervisors and leadership within the Air Force Program Management Office to end prematurely Millennium's Contract FA800321F0004.

28.     On January 20, 2023 the Air Force exercised FAR 52.217-8, Option to Extend Services thereby giving Millennium notice that effective July 31, 2023 Millennium's Contract FA800321F0004 will end.

29.     Millennium, upon information and belief, asserts that Defendant Doyle through her direct tortious interference actions was involved in, and directly caused Millennium to lose a full year worth of time on its Contract FA800321F0004 with the Air Force.

30.     One year of lost revenue from an inability to perform Contract FA800321F0004 equates to $9,301,904.76 (double the value of the Air Force's six month extension).

31.     As of January 24, 2023, Mrs. Morton had been contacted by two potential vendors asking for Plaintiff Millennium to partner with them on the subsequent contract to Contract FA800321F0004.  Neither vendor was aware that Plaintiff Millennium was the current contractor. Both vendors stated that a person purporting to be an Air Force official had given to each of them information relating to the Air Force's forthcoming re-bid of Millennium's current contract. Contracting Officer confirmed in a telephone call that the information shared with the two potential vendors did not come from his office.

32.     Such communications outside of the bidding process are expressly prohibited by law and give rise to a basis for the filing of a Protest upon a contract award.

33.     On January 25, 2023 Contracting Officer stated in an email correspondence with Mrs. Morton that "[m]y team has not been communicating with industry for the new requirement." Thus any communication with industry from a member of Contracting Officer's team was unauthorized.

34.     Millennium, upon information belief,  asserts that Defendant Doyle engaged in the above unauthorized communications and discussions with prospective future industry competitors of Plaintiff Millennium to undermine the Air Force's award of the forthcoming subsequent contract.  Plaintiff Millennium also is a potential bidder and vendor for the new contract and has been directly harmed by Defendant Doyle's efforts to unlawfully support and engage industry competitors of Plaintiff Millennium.

35.     Effective February 5, 2021, Defendant Doyle began Air Force jobs with government oversight responsibilities of Millennium's Air Force Contract FA800321F0004.  This occurred when Defendant Doyle became both the Air Force's COR and Government Program Manager (two separate and distinct jobs that often have overlapping oversight responsibilities).

36.     The Air Force's COR Designation Letter for Defendant Doyle expressly states that Defendant Doyle may be "held personally and financially liable for unauthorized actions" and that "by signing this letter that [she has] no actual or appearance of a conflict of interest."

37.     On February 5, 2021, Defendant Doyle signed her Air Force COR Designation Letter thereby expressly acknowledging that she understood the scope of her designated authority, that she had no actual or appearance of a conflict of interest and that any actions she may take as the COR that are outside of her authority could lead to her being held personally and financially liable.

38.     As further detailed below and may be further confirmed in discovery, between February 5, 2021 and present, Defendant Doyle exceeded her authority by engaging in numerous unauthorized actions.

39.     Section five of Defendant Doyle's COR Designation Letter provides expressly that:

5. You [Doyle] shall NOT:

a. Take any actions that would commit or change the contract/order price, quantity, quality, schedule/delivery, scope of work, place of performance, or any other term or condition of the existing contract. The COR neither misrepresents the limits of their authority in dealing with the contractor nor takes any action which may constitute an informal agreement or unauthorized commitment.

b. Direct or redirect any contract/order action. This can only be done by the Contracting Officer.

c. Advise the contractor HOW to perform but rather WHAT is required in the contract/order, including participating in any manner in the hiring process.

d. Direct the contractor or its subcontractor to operate in conflict with the contract terms and conditions.

e. Discuss acquisition plans, strategies or provide any advance information that might give one contractor an advantage over another contractor in forthcoming procurements.

40.     Defendant Doyle violated section five of her COR Designation Letter in several ways to include, but not limited to: moving, removing and eliminating positions on the Contract. On November 21, 2022, Millennium, through its attorneys at Dickinson Wright, submitted a letter to Contracting Officer detailing factual instances of Defendant Doyle's direct contravention of section 5 of her COR Designation Letter.

41.     Despite knowing a prior employer-employee relationship existed between Millennium and Defendant Doyle and that Defendant Doyle had worked under and in support of Millennium's Contract FA800321F0004, both the Air Force and Defendant Doyle failed to request, place or require adequate limitations on Defendant Doyle's newly assigned job responsibilities which included oversight of Contract FA800321F0004.  Inherent and readily apparent conflicts of interests that Defendant Doyle had with Millennium were ignored by both the Air Force and Defendant Doyle.

42.     In all interactions with Defendant Doyle there is a complete lack of transparency because Plaintiff Millennium never is certain if the communication from Defendant Doyle purports to be in her capacity as the COR or as Government Program Manager.

43.     Plaintiff Millennium has carefully documented the toxic work environment that Defendant Doyle has created. (Exhibit 1, Millennium's Documentation of Concerns).

44.     Berating and impermissible comments from Defendant Doyle, that Plaintiff Millennium has documented, include the following four statements (among many others): "[t]hey [Joint Base San Antonio Government leadership] just need to shut up and color;" "Millennium is the vendor and can be replaced at any time;" "You will NEVER be a subject matter expert in CHPS;" and "Why are so many of the new hires needing 3-4 weeks to start employment?"

45.     Defendant Doyle's documented actions pinpoint the fact that she utterly refuses to treat Plaintiff Millennium fairly and with transparency.  Plaintiff Millennium has documented that Defendant Doyle leads through fear and intimidation, uses an inappropriate over-aggressive tone and approach and refuses to communicate with specific Millennium team members.  Additionally, Defendant Doyle has repeatedly shown that she does not understand basic HR requirements, and she has unrealistic expectations for new hires during on-boarding.

46.     On November 22, 2022, Defendant Doyle sent Millennium an email in which she stated: "Any CHPS contractors *that receive care and feeding* from the HQ AFMC/SG office are required to follow rules per the AFMC Commander."  Millennium's reading and understanding of this "care and feeding" phrase is that Defendant Doyle is referring to Millennium as the contractor and that it receives sustenance, well-being from the CHPS contract thereby implying that she is untouchable as the COR and Government Program Manager and that Millennium is advised to get in line or lose its sustenance, wellbeing, i.e., the contract.

47.     Defendant Doyle's patterns of aggression and irrational behaviors are cyclical and repeat near end of one month/beginning of the next month. Repetitious targeting of Millennium employees by Defendant Doyle has impeded Plaintiff Millennium's ability to recruit and retain staff. This negatively impacts Millennium's contract performance.

48.     Defendant Doyle has exhibited a disregard of Department of Defense and Air Force policy addressing decency and transparency that are mandated with regard to a COR interacting and engaging with a contractor.

49.     Because Defendant Doyle was assigned by the Air Force to be both the COR and Government Program Manager she has become in 'practice' the CHPS Program Manager with everyone reporting to her rather than the Millennium Program Manager.  During monthly

management team meetings, all team members report directly to Defendant Doyle with her asking the questions. Defendant Doyle directs Millennium's team members on multiple aspects of their position and support to Contract FA800321F0004.

50. Practically, Millennium's Program Manager functions as an Administrative Assistant to Defendant Doyle and reports directly to Defendant Doyle. This is very evident during meetings and in email communications wherein the Millennium Program Manager submits reports that Defendant Doyle then will review. There is no co-management or collaboration on the reports or program involvement, if Defendant Doyle asks for a specific report to be created or asks for items to be added to the report Millennium complies.

51. Since becoming the COR and Government Program Manager, Defendant Doyle has unilaterally directed Millennium on who to hire and fire, something that exceeds her government employment authority because such action is in direct contravention of section 5 of her COR Designation Letter and any other authorities that she has as the Government Program Manager. Defendant Doyle does not have the authority directly to hire or require removal of Millennium employees. To act or suggest otherwise is a blatant misstatement and mischaracterization of Defendant Doyle's authority.

52. Defendant Doyle has actively sought to be intimately involved in Millennium's recruiting of employees to include her insistence on reviewing applicant resumes and approving any 2nd Round Interviews. At times, Defendant Doyle has challenged Millennium regarding its hiring selections by stating her expectation to always review resumes and know the "why" behind offers being made.

53. Defendant Doyle has expressly and wrongly misrepresented that the Air Force CHPS program "owns" Millennium's hiring process questions and interview process.

54.     At least twice, Defendant Doyle has personally interjected herself improperly and inappropriately into Millennium's independent evaluations of its employees that support Contract FA800321F0004.

55.     First: Millennium's former employee, Employee 1(who had worked for Millennium for approximately 8 years) received in December 2020 a stellar Performance Evaluation.  But Employee 1 ran afoul of Defendant Doyle when he acted correctly in reporting impermissible conversations that Defendant Doyle had about a Millennium employee being overweight.  In direct reprisal and as retribution,  Doyle sought out and unjustifiably placed Employee 1 on a Personal Improvement Plan ("PIP"), supposedly due to his utilization of services during COVID that were assessed under the goals set by Defendant Doyle acting in her role as the Government Program Manager pre COVID.

56.     Second: Millennium's Program Manager decided that Millennium Employee 2 would benefit from both 30 and 60 day evaluations and therefore provided Employee 2 with such evaluations.  After Defendant Doyle found out about Employee 2's 30 and 60 day evaluations, she actively harassed Millennium's Program Manager until Millennium's Program Manager backtracked her original evaluations.

57.     In direct contravention of section 5 of her COR Designation Letter, Defendant Doyle has made several direct demands to Plaintiff Millennium concerning the firing, removal from contract, and/or elimination of positions regarding specific employees of Millennium, including but not limited to Millennium's Employees 1 through 5.

58.     Defendant Doyle, in direct violation of Air Force policies, has purposefully discriminated against Employees 2, 3 and 6 on the basis of their sex while they were pregnant.  Such discrimination by Defendant Doyle has taken place both historically when Defendant Doyle

was an employee of Millennium and since Defendant became an Air Force federal government civilian employee. When Defendant Doyle attempted to act discriminatorily while an employee of Millennium, Defendant Doyle was immediately reprimanded for the unacceptable and inappropriate attempt to discriminate.

59. Employees 2, 3, and 6 were pregnant at the time Defendant Doyle made direct negative comments and demands to Plaintiff Millennium about them. Defendant Doyle only made such negative comments and demands about these women because they were pregnant and thereby Defendant Doyle purposefully sought to commit sex based discrimination.

60. Sometime during COVID when the supply chains were nonexistent, Employee 1 requested the purchase of a new blood pressure cuff due to the old one not working. Millennium provided approval for this purchase in December 2020.

61. In March 2021, Defendant Doyle became aware of Employee 1's request for the purchase of a new blood pressure cuff and called Ms. Morton demanding that Employee 1 be terminated.

62. Ms. Morton informed Defendant Doyle that Millennium approved the purchase of a new blood pressure cuff and therefore Employee 1 would continue to do the job. As a result of Defendant Doyle's harassment, Employee 1, a well-qualified employee who added significant value to Millennium's performance under the contract, had enough and quit.

63. On March 2, 2022 Defendant Doyle, acting as the Government Program Manager, demanded via a telephone conversation that Millennium terminate its Employee 4. Upon receiving Defendant Doyle's demand, Millennium Employees 7 and 8 consulted Mrs. Morton. Subsequently, Defendant Doyle was informed that Millennium had no grounds to terminate Employee 4. Upon hearing this, Defendant Doyle stated that she was unilaterally eliminating

13

Employee 4's position.  At this point, Millennium provided notification to Employee 4 that his position was being eliminated.  To date, Millennium does not know why Defendant Doyle asked Millennium to terminate its Employee 4 nor why Defendant Doyle unilaterally eliminated Employee 4's position effectively ending his employment with Millennium.

64.     In August 2020, Defendant Doyle, exceeding the scope of her an Air Force employment as a Program Manager, demanded Plaintiff Millennium terminate Employee 5's employment with Millennium.  When Plaintiff Millennium refused Defendant Doyle moved Employee 5's job position to a different Air Force base (Tinker) thereby making it impossible for Plaintiff Millennium to continue to employ Employee 5.

65.     Again, as already stated Defendant Doyle targeted and effectuated discrimination on the basis of sex against Millennium employees who were pregnant.  Defendant Doyle has submitted removal requests to Millennium management concerning pregnant women.

66.     Shortly after Employees 2 and 6 began new assignments for Millennium, Defendant Doyle directly questioned Millennium leadership as to whether Millennium was aware that these women were pregnant when Millennium hired them.  Such grossly impermissible questioning only can be interpreted as an Air Force official with direct oversight authority over Millennium implicitly saying that Millennium should not hire pregnant women.

67.     Defendant Doyle verbally communicated to Employee 2 that she would be eligible for telework, but then refused to authorize any measure of telework for her.[1]  This is in spite of the fact that Employee 2 provided a doctor's order to limit her movement and authorize telework due to her high-risk pregnancy.  Notwithstanding this documented medical necessity, and later within

---

[1] This in and of itself oversteps Defendant Doyle's authority.  The PWS at 2.12 says in relevant part that "Telework is authorized on a pre-approved basis by CO."  Thus, the PWS is clear, the Contracting Officer is to approve telework, not Defendant Doyle.

the same week, Defendant Doyle requested to remove Employee 2, a response triggered clearly by Employee 2's doctor's express medical directive justifying Employee 2's request to telework due to her high risk pregnancy. What happened next was Defendant Doyle moved Employee 9 to the headquarter office and separately authorized four days of telework for a different Program Management Administration position that was not held be a pregnant woman.

68. With regard to Employee 3, the initial highly inappropriate comments by Defendant Doyle drastically hindered Employee 3's abilities to do her job without constantly looking over her shoulders. Eventually Defendant Doyle requested a PIP on Employee 3 followed shortly thereafter by termination.

69. Employee 6 began employment with Millennium in September 2020 and went on maternity leave for the month of November 2020. In late 2020, Defendant Doyle made negative comments to Plaintiff Millennium about Employee 6 being pregnant. Plaintiff Millennium informed Defendant Doyle that it could not discriminate against Employee 6 because she was pregnant.

70. Because of Defendant Doyle's violations of Employees 2, 3 and 6 civil rights, each respective employee has standing to sue Defendant Doyle in their own right.

71. Protection of Employees 2, 3 and 6 basic work place civil rights is germane to Plaintiff Millennium's purpose of providing the Air Force with health and well-being services pursuant to the CHPS program.

72. Neither Count IV as asserted, nor its relief requested requires the participation of Employees 2, 3 and 6 in this lawsuit. As a result of Doyle's actions, Millennium has lost the benefit of the services of well trained and productive employees who are difficult to replace.

73.     Millennium received a formal "Cure Notice" from the Government on October 4, 2022 stating that Millennium was considered in "non-compliance with PWS section 3.19 task S - Logistics Support (specifics listed in Appendix ii – Consumables/Supply Stock Level Requirements) a condition that is endangering performance of the contract and violates the terms and conditions of the contract."

74.     Within the required 10 days, Millennium took extraordinary measures and was able to report in response to the Cure Notice that any non-compliance with PWS section 3.19 task S - Logistics Support would be 100% cured by close of business on Friday, October 14, 2022.

75.     Moreover, in responding to the Cure Notice, Millennium explained to Defendant Doyle's supervisors (the Contracting Officer and Government Program Management supervisor at the time) that Defendant Doyle had, after noting depleted levels in June 2022 communicated and instructed Millennium to wait – not to restock as Millennium recommended – and authorized restocking the legacy sites back to their site minimums only later in the fiscal year (FY), as well as authorization not to procure incentive items or brochures until later in the year.

76.     Upon Millennium's information and belief, Defendant Doyle issued her guidance to not restock supplies, authorized restocking the legacy sites back to their site minimums only later in the fiscal year and gave authorization not to procure incentive items or brochures until later in the year to cause direct harm to Millennium thorough a shortly thereafter issued Cure Notice.

77.     Defendant Doyle advocated for the issuance of a Cure Notice to fix a problem directly caused by her guidance.  As such, Defendant Doyle actively sought to tortuously interfere with Millennium's ongoing performance and continuity of services of Contract FA800321F0004.

78.     The October 4, 2022 Cure Notice was impermissibly issued and stemmed directly from Defendant Doyle's unlawful retaliatory actions against Millennium.  Such action by Doyle

threatened the ability of Millennium to provide ongoing performance and continuity of services of Contract FA800321F0004.

79.     On November 14, 2022, Millennium, through its attorneys at Dickinson Wright, submitted formal requests to Defendant Doyle's supervisors to remove Doyle as the COR and Government Program Manager.  Millennium was unequivocal that "the only acceptable resolution for Millennium is the immediate suspension and subsequent termination and complete removal of all of Defendant Doyle's oversight roles and responsibilities pertaining to the Air Force-Millennium Contract."

80.     On November 16, 2022, Defendant Doyle's prior Contracting Officer supervisor and Government Program Management Office supervisor each separately acknowledged that the Air Force had received Millennium's letter and that the appropriate offices were looking into the matters identified.

81.     Despite the serious allegations being made against Defendant Doyle, Defendant Doyle continued her role as COR and Government Program Manager roles.  Defendant Doyle remains the Government Program Manager and was only recently removed as the COR.

82.     Contracting Officer notified Millennium on December 1, 2022 that "[t]o promote equitable oversite and reduce the workload on a single individual, the government has decided to separate the duties of the Contracting Officer Representative (COR) and Program Manager (PM). A new COR will be identified, and the COR duties transferred once training and a new designation is accomplished."  Contracting Officer provided no timeframe for removal of Defendant Doyle as the COR nor any insight into whether his office had investigated or found validity in any of the accusations that Millennium had raised to him and his office.

83.     Contracting Officer again informed Millennium on January 19, 2023 that he would be terminating Defendant Doyle's COR designation.  Once more, the exact date of his forthcoming revocation of Defendant Doyle's COR authorities was not specified except that it would occur after the identified replacement COR completed the required training which was currently estimated to occur by 31 January 2023.

84.     On January 24, 2023 the Air Force terminated Defendant Doyle's designation as the COR.

85.     At present, Defendant Doyle remains the Air Force's Government Program Manager, whereby she continues to have a job with oversight responsibilities of Millennium's Contract FA800321F0004.  The Air Force continues to express no desire to remove or terminate Defendant Doyle from her Government Program Manager job.

86.     Defendant Doyle's toxic leadership, communications, and subsequent toxic work environment has caused good and qualified Millennium employees to quit, or underperform, and thereby directly impedes with Millennium's ability to perform successfully/at a high level on Contract FA800321F0004.

87.     Until December 2022, throughout the history of the contract the Air Force approved, Millennium's monthly invoice payments the same day as submission of the invoice was made.  In December 2022 Defendant Doyle expressly refused to approve payment of Millennium's outstanding November invoice.

88.     Defendant Doyle stated to Millennium that she did not plan to approve this invoice as it is not a job for the Government Program Management Office. But as the Air Force had not yet designated for Millennium a new COR, and at the time Defendant Doyle remained the COR,

it was she who had the responsibility to act and she who failed yet again to discharge her obligations properly.

89.     Defendant Doyle finally approved Millennium's November 2022 invoice and the Air Force paid Millennium on December 22, 2022 – 14 days after submission.

90.     Millennium raised its lack of prompt payment to the Air Force and was unsatisfactory informed that "the permissions to approve invoices are not tied to specific positions but are a role in the PIEE system."

91.     Defendant Doyle purposefully sought to harm the ability of Millennium to provide ongoing performance and continuity of services to its Contract FA800321F0004 by delaying, initially refusing and then only subsequently under Air Force supervisor pressure approving Millennium's November 2022 invoice.

92.     According to the Contract FA800321F0004's performance work statement ("PWS"), the Contracting Officer alone is tasked with approval/disapproval of Millennium employee telework requests.

> PWS 2.12. Telework.  Telework shall be authorized only for the benefit of the government. Telework is authorized on a pre-approved basis by CO. Telework is authorized for contractor personnel through the contractor's standard company telework program to include training and policy guidance.  Regular telework is not authorized.  Contractor personnel are expected to work on-site with few exceptions.  During the current pandemic times and other times as designated by the CO, the contractor shall submit a telework plan to the Government COR **for approval/disapproval by CO** with any subsequent modifications to said plan resubmitted for approval. Written Government concurrence is required for all telework hours and work plans.  (Emphasis added.)

93.     On numerous occasions, Defendant Doyle has acted in violation of the PWS and her COR Designation Letter by herself as the COR approving or disapproving telework requests of Millennium employees.

94. Defendant Doyle has made an intentional misrepresentation in the context of an official government communication related to telework requests. In late 2022, Defendant Doyle misrepresented the reasoning for her prior authorization of telework of a Millennium Employee 10. More precisely, Doyle's late 2022 stated reasons for her prior authorization approval do not reflect accurately what actually occurred.

95. Defendant Doyle has not followed official Air Force superior instructions and continues to communicate in a manner maliciously and intentionally designed to undermine Plaintiff Millennium's performance on the contract.

96. Defendant Doyle's unlawful actions amount to retribution by a former employee of marginal competency who left to take a civil service job overseeing her prior employer.

97. Defendant Doyle's actions negatively impact Millennium's standing and reputation with the Air Force. As a result, it will not be afforded due consideration in the awarding of the Air Force's new contract, which is valued at approximately $52.25 million.

### COUNT I— TORTIOUS INTERFERENCE WITH THE ONGOING AND PAST PERFORMANCE OF CONTRACT FA800321F0004

98. Plaintiff refers to and incorporates Paragraphs 1-97 of this Complaint as if fully stated herein.

99. Without privilege to do so, Defendant Doyle has, in a systematic and ongoing manner, intentionally interfered with Plaintiff's ability to perform under its Contract FA800321F0004 with the Air Force.

100. As detailed above, Defendant Doyle continues to actively take impermissible actions against Plaintiff Millennium and its employees that exceed her authority within the Air

Force. Defendant Doyle has sought harm Plaintiff's overall reputation and ability over the next six months to provide the Air Force its needed health and well-being services pursuant to the Contract.

101.    Even assuming that Defendant Doyle is formally removed as the COR, Defendant Doyle remains the Government Program Manager.  As the Government Program Manager, Defendant Doyle has direct Air Force oversight job responsibility for Millennium's Contract FA800321F0004 wherein she continues to intentionally seek out ways to harm Plaintiff's performance under the contract.

102.    Defendant Doyle's past, current and expected future actions directly interfere with Millennium's ability to perform its obligations under Contract FA800321F0004.

103.    As a result of Defendant Doyle's past and ongoing tortious interference with Contract FA800321F0004, Millennium has suffered great financial harm and detriment.

104.    Plaintiff has a legal right to perform its Contract FA800321F0004 obligations up and until July 31, 2023 without interference from Defendant Doyle.

105.    Defendant Doyle's past and presently ongoing tortious interference with Contract FA800321F0004 is wanton, willful, malicious and in reckless disregard of Millennium's contractual obligations to the Air Force, thereby entitling Millennium to punitive damages.

**COUNT II—TORTIOUS INTERFERENCE OF CONTRACT FA800321F0004'S CONTINUITY OF SERVICES**

106.    Plaintiff refers to and incorporates Paragraphs 1-97 of this Complaint as if fully stated herein.

107.    Without privilege to do so, Defendant Doyle has in a systematic manner, intentionally interfered with Plaintiff's ability to provide continuity of services under its Contract FA800321F0004 with the Air Force.

108.    Defendant Doyle's past, current and expected future actions directly interfere with Millennium's ability to timely perform its obligations under Contract FA800321F0004.

109.    As a result of Defendant Doyle's past and presently ongoing tortious interference with Contract FA800321F0004, Millennium has suffered great financial harm and detriment.

110.    Plaintiff has a legal right to perform its Contract FA800321F0004 obligations up and until July 31, 2023 without interference from Defendant Doyle.

111.    Defendant Doyle's past and presently ongoing tortious interference with Contract FA800321F0004 is wanton, willful, malicious and in reckless disregard of Millennium's contractual obligations to the Air Force, thereby entitling Millennium to punitive damages.

## COUNT III—DEFAMATION

112.    Plaintiff refers to and incorporates Paragraphs 1-97 of this Complaint as if fully stated herein.

113.    Defendant Doyle has made false statements to Air Force officials (and potentially others) concerning Plaintiff Millennium and Plaintiff Millennium's contract performance.

114.    At a minimum Defendant Doyle's fault amounts to negligence and likely either was grossly negligent or intentional.  Defendant Doyle's job obligated her to be truthful to her Air Force supervisors.

115.    Plaintiff Millennium has suffered damage because the Air Force, based on Defendant Doyle's defamatory statements and actions, has chosen to deny Millennium an additional one year of contract performance (equitable to a loss of $9,301,904.76 in revenue). Further, Defendant Doyle has harmed Plaintiff Millennium by intentionally tarnishing and disparaging Millennium's overall reputation within the respective Air Force Contract and Program Management Offices.

## COUNT IV—VIOLATIONS OF 42 U.S.C. § 1983, FOR DEPRIVATION OF CIVIL RIGHTS AND DISCRIMINATION BASED UPON SEX

116.    Plaintiff refers to and incorporates Paragraphs 1-97 of this Complaint as if fully stated herein.

117.    Defendant Doyle denied Plaintiff Millennium's Employees 2, 3 and 6 their employment rights, as guaranteed by the Constitution, Fourteenth Amendment and federal statutes, enforceable under 42 U.S.C. § 1983, by creating a hostile work environment, treating them disparately and discriminating against both on the basis of their pregnancy and gender.  Employees 2, 3 and 6 were subjected to said work place conditions based solely on their pregnancy and gender and were subjected to said conditions when those in non-protected categories were treated differently and favorably in their employment.

118.    This discrimination has caused Plaintiff Millennium and its employees past, present and future pain and suffering, loss of enjoyment of life, loss of employment opportunities, loss of income, past, present and future.

119.    Because of Defendant Doyle's violations of Employees 2, 3 and 6 civil rights, each respective employee has standing to sue Defendant Doyle in their own right.

120.    Protection of Employees 2, 3 and 6 and basic work place civil rights is germane to Plaintiff Millennium's purpose of providing the Air Force with health and well-being services pursuant to the CHPS program.

121.    Neither Count IV as asserted, nor its relief requested requires the participation of Employees 2, 3 and 6 in this lawsuit.

122.    Therefore, Plaintiff Millennium has associational standing under 42 U.S.C. § 1983.

123.    As a direct and proximate result of Defendants' breach of the Contracts, Plaintiff Millennium and its employees suffer and will continue to suffer pecuniary damages.

## DEMAND FOR JUDGMENT

WHEREFORE, Plaintiff Millennium requests that this Court enter judgment in favor of Plaintiff against Defendant Doyle for compensatory damages in an amount that is far, just, and reasonable, and in excess of $75,000, and grant such other and further relief as the Court deems fair and equitable, including but not limited to punitive and exemplary damages, costs, interest, and attorneys' fees for Defendant's intentional malicious acts.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff Millennium demands trial by jury in this action of all issues so triable.

Respectfully submitted,

*/s/ Jonathan R. Secrest*
Jonathan R. Secrest (0075445)
Jacob S. Frenkel*
Thomas F. Christian*
DICKINSON WRIGHT PLLC
180 E. Broad Street, Suite 3400
Columbus, Ohio 43215
(614) 744-2572
jsecrest@dickinson-wright.com
jfrenkel@dickinson-wright.com
tchristian@dickinson-wright.com
*Attorneys for Millennium Health & Fitness Inc.*

* Pro Hac Vice application forthcoming

24

EXHIBIT 1



# Documentation of Concerns



**TABLE OF CONTENTS**

Our Promise ........................................................................................................... **2**

Executive Summary ............................................................................................... **2**

Concern #1: COR/Government Program Manager was employed by Millennium ... **2**

1.    Millennium believes that by the COR/Government Program Manager having been employed by Millennium for ~5yrs, is a conflict of interest and inhibits her ability to be able to objectively and fairly evaluate Millennium. .................................. **2**

2.    Employed with Millennium for almost 5 years prior to moving into her government position, without a break in service. ......................................................... **2**

3.    Due to this there is also significant concern for her directing Millennium as the vendor to update processes, modify our benefits plan, offer additional incentives, add details in our offer letters, direct us to update HR processes, hire/fire, all because of her prior knowledge and work history with Millennium. .... **2**

4.    Due to her prior relationship as a Millennium employee, we also see the continued negative treatment and disrespect of our team members since she transitioned to a federal employee position overseeing the contract. ...................... **2**

Concern #2: Inherent incongruity and irrationality of a COR who is also assigned as a Government Program Manager. ................................................................................. **2**

Concern #3 COR/Government Program Manager often sends contradictory and conflicting direction. ................................................................................................... **3**

Concern #4 The COR is unable to objectively evaluate and oversee this contract since she is also the Government Program Manager. ................................................. **3**

Concern #5 this contract is being run as a Personal Services Contract with the COR as the de facto Project Manager of the CHPS contract. ................................... **5**

Concern #6 there is a Toxic Work Environment generated by the above 2 points and the leadership of fear used by the COR/Government Program Manager. ......... **7**

1.0     Contradictory and conflicting direction ............................................................ **10**

2.0     Inconsistency in flexible solutions for fingerprints ......................................... **14**

3.0     Lack of start-up readiness at expansion sites ................................................ **15**

4.0     Recruiting ........................................................................................................ **16**

5.0     Evaluations of Team Members ....................................................................... **21**

6.0     Requests for firing, removal from contract, and/or elimination of position/ transfer of duties to another existing position on contract (advancing individual).        **25**

7.0     Double tapping existing team members rather than backfilling vacant positions. ....................................................................................................................... **27**

8.0     HR Requirements ............................................................................................ **30**

9.0     Unrealistic expectations for new hires during on-boarding .......................... **32**

10.0    My Program ..................................................................................................... **33**

11.0    Exit Interviews ................................................................................................ **34**

12.0    Unrealistic expectations ................................................................................. **35**

13.0    Suggestion Email Response from Government Program Manager .............. **38**

**MILLENNIUM**
health & fitness

## Our Promise

Millennium Health & Fitness is <u>fully committed</u> to the success of the CHPS program and <u>values our partnership</u> with the government and our government contract representatives.

## Executive Summary

Throughout the life of the contract and embedded into the contract itself is the inherent incongruity/compatibility of assigning the COR as a Government Program Manager who in turn runs the contract as a "Personal Services" contract with disastrous results.

### Concern #1: COR/Government Program Manager was employed by Millennium

1. Millennium believes that by the COR/Government Program Manager having been employed by Millennium for ~5yrs, is a conflict of interest and inhibits her ability to be able to objectively and fairly evaluate Millennium.

2. Employed with Millennium for almost 5 years prior to moving into her government position, without a break in service.

3. Due to this there is also significant concern for her directing Millennium as the vendor to update processes, modify our benefits plan, offer additional incentives, add details in our offer letters, direct us to update HR processes, hire/fire, all because of her prior knowledge and work history with Millennium.

4. Due to her prior relationship as a Millennium employee, we also see the continued negative treatment and disrespect of our team members since she transitioned to a federal employee position overseeing the contract.

### Concern #2: Inherent incongruity and irrationality of a COR who is also assigned as a Government Program Manager.

1. Millennium is never certain if the communication from Ms. Doyle is from the COR or from the Government Program Manager.
    1. **Management Meeting 10/18/22** this meeting is bi-weekly for all the management team to meet to discuss the status of program etc. During this specific meeting, each team member was reporting to Katie and providing her updates not the team meeting to give both Co Managers updates. When it came to the CLIAs, Katie asked Heather for the updates for CA and after Heather provided the update, Katie reminded Heather that this is contractual requirement and deliverable thus the COR hat. At no time did any other individuals providing updates on areas being reviewed receive the same aggressive tone and reminder of contractual compliance, and seemingly threats toward non-compliance. This happens frequently both in verbal communications as well as email communications with the COR/Government Program Manager and her differential treatment to all team members throughout Millennium.



## Concern #3 COR/Government Program Manager often sends contradictory and conflicting direction.

**Incentive Items, Brochures, Base Sizes, Travel**

2. <u>**Cure Notice**</u>- Millennium was not notified of COR/Government Program Manager approval until 9/13 to Millennium Program Manager and Millennium Program Manager Assistant. Millennium COO was notified on 9/14 from COR/Government Program Manager.

3. <u>**Base Sizes**</u> **Inconsistency on regional sites and definition of large sites**– Government Program Manager provided a change in classification of JBSA after Millennium CEO engaged to request clarification on the JBSA sites. Millennium CEO engaged with the COR/Government Program Manager to ensure that her previous site classification size was still correct. COR/Government Program Manager changed the JB Lackland, Randolph, Ft Sam Houston to being separate rather than one as she communicated previously to the Millennium PM.

4. <u>**Travel**</u>-Government Program Manager required Millennium to send the cost projection to her to review and sign -- prior to booking. On 10/18 she provided new guidance, in which she now no longer requires her to sign the travel request template, which she requested of Millennium in March of 2022.

5. <u>**Inconsistency in flexible solutions for fingerprints**</u>
Luke HPC fingerprints – June 2nd - (in Colorado working at Peterson and asked for prints to be completed on location) – MHF flew her to Luke to get her fingerprints completed (avoiding a "noted delay")
WP HPS Fingerprints June 3– COR/Government Program Manager accommodated WP HPS at Youngstown Air Base

6. <u>**Lack of start-up readiness at expansion sites**</u> (office space, computers, phone, email)
Team members expected to promote the program but had nothing official to provide (no computer, no email, no phone number, no materials). Local contacts questioned staff about the validity of the program since they did not have AF emails, phones, etc. Commenting that they would not participate in the CHPS program until Millennium staff had these. Staff have been on installations for 5 months without the necessary resources to successful execute the program (no office, no computer, no phone, no email, no printer to print resources, etc.) Several of the sites MHF has had to provide laptops and phone lines (not part of the PWS) in order to have the staff start. Once notified about the deficiency, MHF went above and beyond to provide solutions, mailing laptops, creating Millennium emails and issuing phone numbers while waiting. Lackland – laptop, phone, and email. Randolph – laptop, phone, and email. Kirtland- 2 laptops, , phone, and email. Other sites where Millennium issued equipment temporarily – Offutt, Luke, and Keelser.

## Concern #4 The COR is unable to objectively evaluate and oversee this contract since she is also the Government Program Manager.

7. When she writes a CPARs or even a request for a Cure Notice, she is often in fact putting herself on report.
    1. **CPARS 2020 and 2021**
    2. **CPARS received for 2020 – Rated Excellent in multiple areas**



3. **CPARS received for 2021-Rated Very Good in all areas**

Rated lower in 2021 by Ms. Doyle. MHF was waiting for the CPARS and when Sherry Morton went up to review the CPARS, it was noticed that the 2021 CHPS was already done with no response from Millennium.  CEO reached out to the contracting office to find out how this happened and found out that Ms. Doyle had stated that it needed to be sent to Tessie Morton yet she knew Sherry was the one it was to go to and that in June 2021 Ms. Doyle and Ms. Holl had requested Tessie be removed as the corporate PM.  Additionally, Ms. Doyle knew that Tessie was no longer with Millennium, thus the CPARS notification would not be received.

The contracting office said nothing could be done so Sherry reached out to the Help Desk for the CPARS and they provided direction to the contracting office to open it back up for Sherry to comment.

**Despite even stronger results and many process improvement changes in multiple areas since 2020, the 2021 CPAR reflected no "Excellent" ratings and narration focused on the negative with multiple areas being inaccurate and/or misrepresented.**

*CPAR - "In regards to vacancies, the Contractor did not exceed a quarterly turnover > 30% per the Services Summary, but did have **a total turnover rate of 73%** during this reporting period with some positions being vacant multiple times (WP HPC x2, Edwards HPC x3, Edwards HPS x2) and some positions with short term employment (Robins HPC/Hurlburt Field HPS/Tinker HPS/Hill HPC - less than 1 yr.; Edwards HPC < 3.5 months; Edwards HPC @ 14 days) at great expense and time to the Government for security investigations.  The program also had turnover with 1/3 of contractor management team with Government program manager asking for vendor to consider offering an in-person meeting to cover team building, program goal setting, program development, and other adjustments to consider of upcoming CONUS-wide expansion. "*

Our Response – "Total of 45 approved positions for the reporting period (minimum number of 39)

Q1 - 5 Resignations/Terminations (Carros, Silvester, Lanier, Tubbs, Jackson) - 11.11% turnover-*Note that Carros and Jackson was due to Government Co Manager's targeting and influencing the Millennium Program Manager to negatively evaluate – when prior year's performance had never been a concern) Thus the turnover would have been even less.*

Q2 - 3 Resignations (Frantz, Allen, Smith) - 6.67% turnover

Q3 - 8 Resignations (Johnston, Bonner, Hele, Pittman, Smith, DeCaro, Bredeweg, Bucaro) - 17.78% turnover

Q4 - 8 Resignations (Williams, Jones, Erickson, Tegtmeyer, Lehman, Mathieson, Toledo, Thompson) - 17.78% turnover

Average quarterly turnover:  13.35%

**Actual Yearly total turnover (24 out of 45 positions:)  53.3%**

Management team included - J. Archer, S. Thompson, K.Gabner, A. Tegtmeyer, T. Bradley, A. Jones (6)

    Mgmt team resignations -  A. Tegtmeyer & A. Jones (2)

Edwards AFB

Joshua Donis HPS: Hired 10/8; completed TASS 1/4 to start
Lauren Rollenhagen HPC:  Hired 1/11; Started on base 4/18"
Also, the COR/Government Program Manager was counted any
"advancement" vacancy as turnover, thus internal promotions are
negatively impacting MHF
The narratives do not align with the facts presented.

### Concern #5 this contract is being run as a Personal Services Contract with the COR as the de facto Project Manager of the CHPS contract.

2. Because the Government Program Manager is also the COR she becomes in 'practice' the CHPS Project Manager with everyone reporting to her rather than the Millennium Program Manager.
   1. **Monthly Management Team Meeting**-All team members are reporting directly to Ms. Doyle with Ms. Doyle asking the questions. She is directing our team members on multiple aspects of their position and support to the contract.
3. Millennium Program Manager acts as an Administrative Assistant to Ms. Doyle.
   1. **MHF Program Manager** provides more of administrative support to Ms. Doyle and reports directly to Katie. This is very evident during meetings and in email transitions where the Millennium Program Manager submits reports that Ms. Doyle then will review. There is no co-management or collaboration on the reports or program involvement, if Katie asks for a specific report to be created or asks for items to be added to the report, we comply.
4. Ms. Doyle directs who to hire & fire
   1. **Recruiting**
      Resumes
      2nd Round Interviews
      Challenges Millennium regarding hiring selections
      Voicemail from COR/Government Program Manager – stating expectations to review resumes and know the "why" behind offers being made
      Stating that **the CHPS program "owns" the hiring process questions and interview process**
   2. **Evaluations of Team Members**
      Questions MHF on the Performance Evaluations/Review of Key Members.
      Ron Jackson had worked on this program for over 8 years.  Mr. Jackson just received in December 2020 a stellar Performance Evaluation.  When Millennium was requested initially to put Mr. Jackson on a PIP due to the utilization of services during COVID with the goals set by the Government Program Manager pre COVID.  Ms. Morton questioned the validity of putting Mr. Jackson on a PIP due to several facts:  Pre Covid Goal Numbers; less than 10% of the Civilian Population reporting on site for work; other sites had lower numbers than Mr. Jackson.  Ms. Morton was basically told to stay in her lane and that she was not a SME.  Additionally, during COVID when the supply chains were non existence, Mr. Jackson requested to purchase a new blood pressure cuff due to the old one not working.  Millennium provided the approval in December 2020.
      Government Program Manager in March 2021 was made aware of this and called Ms. Morton up and requested that Mr. Jackson be terminated.  At this point, Ms. Morton informed the Government Program Manager that Millennium approved the purchase so that Mr. Jackson could continue to do is job.  Eventually Mr.

Jackson resigned due to constant harassment from the Government Program Manager.

Trace Bradley the Government Program Manager requested via a telephone conversation that Mr. Bradley be terminated March 2, 2022. Upon receiving this request from the Government Program Manager, Ms. Collins and Ms. Owens reached out to Ms. Morton to provide the request. Ms. Morton spoke to legal counsel at Dickinson & Wright. We did not have grounds to terminate Mr. Bradley and provided that direction to the Government Program Manager who then stated that she would be eliminating the position. At this point, Millennium provided notification to Mr. Bradley that his position was being eliminated.

Sierra Rankin was provided with both 30 and 60 day evaluations and when Government Co Manager questioned MHF Co Manager, the MHF Co Manager back tracked her original evaluations.

**Requests for firing, removal from contract, and/or elimination of position**
3. **APM with high-risk pregnancy**
   APM requested to telework but was denied (note that the work she was doing did not require onsite presence). The same week, COR stated that if and when Naomi (PMA at same location) moves she will approve her to telework. APM Position eliminated because MHF could not terminate
   Also, on APMs first day, COR/Government Program Manager asked if we knew APM was pregnant – implying we should not hire her
4. **Special Projects Manager – COR/Government Program Manager eliminated position at Wright Patterson and requested to not backfill.** This employee had previously been promoted from HPS at request of COR/Co-manager.
   Trace previously received good performance reviews – no evidence of performance gaps. At direction of COR/Government Program Manager who wanted him terminated, the position eliminated because MHF could not fire him based upon his reviews from Jenny.
5. **Multiple people** (Ron Jackson, Sarah Carros, Tessie Morton, Trace Bradley)
   **Ron Jackson** –brought to our attention the comments Katie made about Alexandria (overweight during a Utah Team meeting). CEO questioned Ms. Doyle and Ms. Judi on this and they denied it yet in several later conversations it was brought up. After this discussion, Ron was brought up on a PIP due to numbers yet the entire team aside from Hurlburt was below their numbers. In fact, when MHF brought this up to the Government Program Manager and said we would have to write up the entire team aside from Hurlburt, she then found another reason to harass him. Two additional team members at the same site left shortly after Ron's departure and cited the negative impact of what had happened to Ron.
   **Sarah Carros** was pregnant upon her arrival as the new HPC and MHF was questioned as to why we did not know. The comments from the COR/Government Program Manager had known, she they would not want her hired.
   *EEOC complaints were considered against Gov COR/Government Program Manager, but they withheld because they do not want to hurt Millennium*

   **COR/Government Program Manager Double tapping existing team members rather than backfilling vacant positions.**

**MILLENNIUM**
health & fitness

**Concern #6 there is a Toxic Work Environment generated by the above 2 points and the leadership of fear used by the COR/Government Program Manager.**

5. Ms. Doyle leads through fear and intimidation.
    1. **Fear and Intimidation**
       As a vendor we are operating in a constant state of fear do to the intimidation Ms. Doyle regularly elicits.
    2. **Aggressive tone and approach**
       During discussion last May between COO and Government COR/Government Program Manager about candidates selected for the CHPS program, the Government COR/Government Program Manager raised her voice, was very aggressive in her tone, and had to repeatedly be told by the COO to "calm down and breathe". Multiple other Millennium office personnel could hear Ms. Doyle yelling though Ms. Collins' headset from across the room in a separate office space.
       During multiple conversations with CEO, the COR/Government Program Manager aggressively stated in a very demeaning tone, "*You will __NEVER__ be a subject matter expert in CHPS.*" – indicating that non-CHPS specific MHF team members should stay out of the CHPS contract.
    3. **Refusal to communicate with specific team members**
       Until directed by MHF CEO, Government COR/Government Program Manager refused to communicate directly with the HR Manager, which caused a lot of additional and unnecessary layers of communication and chaos. Ms. Doyle previously had done the same with COO and other individuals.
    4. **Targets people and lack of support for individual coaching and development (Requests for firing, removal from contract, and/or elimination of position – referenced in concern #1 lack of trust)**
       APM with high-risk pregnancy
       Special Projects Manager
       Multiple personnel (Ron Jackson, Sarah Carros, Kaelynn Studebaker, Tessie Morton, Trace Bradley, Sierra Rankin) Who is she targeting now?
    5. **Patterns of aggression and irrational behaviors– repeat near end of one month/beginning of the next**
       Requests for removal of people
       > Ron Jackson – Began beginning of February 1st when reports came in
       > Trace Bradley – March 2 (eliminated the position)
       > Kaelynn Studebaker – Aug 28 (moved the position to Tinker)
       > Sarah Carros – Feb 26 (pregnant)
       > Sierra Rankin – July 29 (pregnant)
       > Tessie Morton – April 26
       > Emailed CEO to express frustrations about HR Director "not doing her job" (Aug 29)
    6. **Negative comments about JBSA**
       In context of site readiness and the JBSA leadership, Ms. Doyle stated, *"They just need to shut up and color"*
    7. **Comments to staff**

**MILLENNIUM**
health & fitness

"Millennium is the vendor and can be replaced at any time"

8. As recent as Tuesday 10/24/22 evening, Government Program Manager sent several emails after 10pm to Millennium. This is in direct violation of the contract PWS **2.5. Hours of Operation.** *The contractor shall be responsible for conducting business at all locations, generally between the hours of 0630 to 1630 Monday thru Friday. Alternative 40 hour per week work schedules shall be allowed pending coordination and notice with the Government COR. The contractor is not expected to work during Federal holidays, administrative closings, or similar Government directed facility closings.*

6. Ms. Doyle doesn't understand basic HR requirements.
   1. **HR Requirements**
   2. **Unrealistic expectations for new hires during on-boarding**
      (Expectations for new hires to essentially put life on hold during on-boarding and then immediately respond when cleared)
      New Scott HPS submitted resignation at his former employer immediately upon being cleared to start with us
      Employer required 3-week notice enabling his start date with us to be 5/16
      COR communicated, "Why are so many of the new hires needing 3-4 weeks to start employment?"
      Question has been repeated for multiple new hires
      New Hire on-boarding (Scott HPS communicated international travel plans Sept 16-20). HR Director communicated to COR and requested an extension beyond the normal 48 hours for completion of the e-QIP should it be sent to new hire during the time planned away. COR/Government Program Manager replied, "I defer to you as the employer with those decisions, but it **will be a delay** per the employee to complete and not on the government end.". Unrealistic expectation is for the new hire to put life on hold for the time of the security process but immediately be ready to start work once notified.
   3. **Unrealistic expectations for response time**

7. Ms. Doyle doesn't allow her subordinates to use their education and creativity to create a 'better' program at the local levels or make suggestions.
   1. Numerous team members have left the program stating that they were unable to develop any content, flyers, marketing to assist the program. Their hand was slapped for reaching out to place a suggestion.
   2. Team member reached out to make a suggestion to the website administrator and was met with an almost disgust for why he was even reaching out to her to make a suggestion to the program, in any of her roles; COR/Government Program Manager/ Website administrator.
   3. **Stated that contractor staff cannot list their credentials on the signature line.**
8. The program is "her baby" and nobody better touch, change, or critique it.
   1. "My Program" – COR/ Government Program Manager states this is her program.
   2. Exit Interviews
   3. Team Members making suggestions/recommendations for improvement and feeling like they cannot reach out and are scorned if they do provide feedback about the program.

**MILLENNIUM**
health & fitness

## 1.0 Contradictory and conflicting direction

1. Cure Notice
   Wednesday, 9/14/2022 11:48amCT – COR/Government Program
   Manager emailed notating road blocks with vendors for the last few
   weeks identifying incentives and brochures. She states she found the
   stock "yesterday" (9/13). Upon receiving this email Millennium COO
   began working with Millennium CEO to obtain approval of the
   $150,000+ in orders. Orders were approved Friday, 9/16/2022 10:54am
   CT (note approval made less than 48hrs from initial notification).

-----Original Message-----
From: DOYLE, KATIE M NH-03 USAF AFMC AFMC/SGPO <katie.doyle.1@us.af.mil>
Sent: Wednesday, September 14, 2022 11:28 AM

To: Heather Collins <hcollins@millenniumenterprises.net>
Cc: Archer, Jennifer D CTR (USA) <jennifer.d.archer2.ctr@health.mil>
Subject: CHPS - challenge incentives/educational brochures
Importance: High

Hi Heather,

We have continued to hit road blocks with vendors the last few weeks for challenge incentives and brochures, so
Kerri, Jenny and myself have been busy searching for additional options and contacting vendors for the supplies we
are needing for the upcoming wellness challenge.

We finally found some brochures that were in stock yesterday to get ordered.
Hopefully those have already crossed your desk for approval and gotten ordered. Additionally, we finally found a
vendor with enough stock of food scales (see attached quote) for the enrollment incentive award. These all need to
be ordered ASAP so we can get a logo imprint image to use on our marketing, time for production/shipping to get
them to the sites by 12 OCT in time for the challenge weigh-ins.

I am working on some options for the completion incentive award and hope to get those sent no later than the end of
this week.

Please let me know if there are any questions.

Thanks,

Katie

Katie Doyle, MS, CWP
Civilian Wellness Program Manager
HQ AFMC/SGPO
Wright-Patterson AFB, OH 45433
DSN 312-787-6447 (Comm: 937-257-6447)
Cell 937-623-7014



==Orders==



**Sherry Morton**

To ○ katie.doyle.1@us.af.mil
Cc ✓ Heather Collins

Reply   Reply All   Forward   

==Fri 9/16/2022 10:54 AM==

Katie just wanted to follow-up from our call yesterday. Confirming all ==orders== have been ==approved== for Heather to order. Sherry

Sent from my Verizon, Samsung Galaxy smartphone
Get Outlook for Android

Millennium Program Manager confirming that it was her "understanding the whole time that she (COR/Government Program Manager) wanted everything to at least be ordered and on the way to the sites before 1OCT".

-----Original Message-----
From: Archer, Jennifer D CTR (USA) <jennifer.d.archer2.ctr@health.mil>
Sent: Friday, September 30, 2022 10:01 AM
To: Heather Collins <hcollins@millenniumenterprises.net>
Subject: FW: Expansion site status check
Importance: High

So I have been thinking more about this. I do think this was Katie saying the sites needed to be 100% operational by 01 OCT (and she mentions site minimums with equipment, incentives, and brochures). ==It was my understanding the whole time that she wanted everything to at least be ordered and on the way to the sites before 01 OCT.== I did think the expansion sites would have some things but I didn't think they would be at the mins.

V/R,

Jennifer Archer, AF CHPS Program Manager, CTR Millennium Health and Fitness

On assignment with:
Civilian Health Promotion Services
8941 Entrance Road A - Building 3334 Room 123 Tinker AFB, OK 73145

Office: (405) 582-6278

*my email has changed to jennifer.d.archer2.ctr@health.mil - please save for future correspondence*

*Privacy Notice: Use or disclosure of information contained on this sheet to anyone outside of the contracting office is unauthorized.*



2. Base Sizes – 10/13/2022 we were notified of a change in classification after Millennium CEO contacted Government Program Manager seeking clarification.



RE: Clarification

DOYLE, KATIE M NH-03 USAF AFMC AFMC/SGPO <katie.doyle.1@us...

To ⦿ Sherry Morton; ⦿ Angela Owen                                    10/13/2022

Cc ⦿ Heather Collins; ○ MOON, BROCK T CIV USAF AFMC 771 ESS/EGB;
   ○ JACOBSON, SHERRY A Capt USAF AFMC 771 ESS/EGB

Signed By  There are problems with the signature. Click the signature button for details.

Good afternoon,

JBSA Randolph and JBSA Lackland are both onsite team locations per the PWS, with JBSA Ft Sam as a satellite office that those teams share responsibility to provide services. Ft Sam doesn't count as a site per Appendix ii consumables/supply stock level requirements, but will have house some of the stock that Randolph and Lackland have since the government did provide CHPS with a permanent office space at that location.

Appendix ii defines a small site with <4K civilian employees and a large site with >4K civilian employees. Based on this definition, both Lackland and Randolph are considered large sites with 6,324 and 4,994 DAF civilian employees, respectively. You can find population numbers located in Appendix i. This would also affect Peterson SFB, that is the other regional team that supports numerous installations in the Colorado Springs area and they would additionally qualify as a large site with all DAF civilian assets they are providing services for.

In previous co-management conversations with Ms. Archer, the JBSA regional area had not been fully manned, not in permanent office space, and not all staff trained to provide services so had discussed treating the region as at least a single large site to get started with equipment and supplies. However, I believe all staff are trained now and housed in permanent spaces allocated by the government so should follow the PWS definitions. Additionally, I am not sure which contract documents you have shared with the contractor staff (i.e. Ms. Archer and her team) to have all this necessary information. I do believe that with no historical reference for these regional teams, these definitions may not fit the best for these locations and the government would be open to discussing a different stock level definition that would better meet their needs.

Mr. Moon/Capt. Jacobson, feel free to provide input if your interpretation is different.

V/r,.

Katie Doyle, MS, CWP
Civilian Wellness Program Manager
HQ AFMC/SGPO
Wright-Patterson AFB, OH 45433
DSN 312 787 6447 (Comm: 937 257 6447)
Cell 937-623-7014

3. Travel

3/17/2022 Ms. Doyle requested a travel request template be sent to her for each travel arrangement for her to review and approve. Follow up email and approval below.



**MILLENNIUM**
health & fitness

**From:** Heather Collins <hcollins@millenniumenterprises.net>
**Sent:** Thursday, March 17, 2022 3:54 PM
**To:** DOYLE, KATIE M NH-03 USAF AFMC AFMC/SGPO <katie.doyle.1@us.af.mil>
**Cc:** ARCHER, JENNIFER D CTR USAF AFMC 72 AMDS/SGPZ <jennifer.archer.4.ctr@us.af.mil>
**Subject:** [URL Verdict: Unknown][Non-DoD Source] L. Marshall Travel Request

Katie,

Based on our call earlier, regarding your request for a travel request template, let me know if you are ok with using the existing travel request and expense form (see attached).

For Lahendra, her flight to Atlanta would arrive early enough that she could go onsite and get a few hours of training with Michele. The only flight available on Friday was at 10pm back to Gulfport – the early flight was booked. There is a flight out on Thursday at ~6pm that would still allow her the ability to train all morning until ~1pm with the Robins team. Both Jenny and I think this is the better option since she will be able to train for a few hours on Monday with the team after she arrives.  I would hate for her to have to wait around all day on Friday and be the last flight out for the day to her regional airport, especially in the Atlanta airport.

Let me know if you have any questions and if you are ok with using this as the travel request template.

Respectfully,

Heather Collins
Chief Operations Officer
Millennium Enterprises
EMAIL: hcollins@millenniumenterprises.net

**From:** DOYLE, KATIE M NH-03 USAF AFMC AFMC/SGPO <katie.doyle.1@us.af.mil>
**Sent:** Thursday, March 17, 2022 4:24 PM
**To:** Heather Collins <hcollins@millenniumenterprises.net>
**Cc:** jennifer.archer.4.ctr@us.af.mil
**Subject:** RE: L. Marshall Travel Request

Hello,

I concur with your assessment below. Since she is able to arrive earlier on Monday to spend some time onsite, I think it is fine for her to have a shorter onsite day Thursday in order to travel back to the airport and fly back to her destination.

I am also fine with using this form, we don't need to create a new one. Since this is in excel as part of your entire travel pack, what is your preference for approval signature?

Thanks,

Katie Doyle, MS, CWP
Civilian Wellness Program Manager
HQ AFMC/SGPO
Wright-Patterson AFB, OH 45433
~~DSN 312-787-6447 (Comm: 937-257-6447)~~
Cell 937-623-7014

10/18/2022 – Ms. Doyle indicates via email that she already provided concurrence for the training via email and references the PWS. Whereas all previous travel requests she indicated the travel request template should be sent to her via PDF to sign.



RE: Travel for Training

DK  DOYLE, KATIE M NH-03 USAF AFMC AFMC/SGPO <kati

To ● Heather Collins                                                         Tue 10/18
Cc ○ jennifer.archer.4.ctr@us.af.mil; ○ jennifer.archer.4.ctr@us.af.mil
Signed By  There are problems with the signature. Click the signature button for details.

ⓘ You forwarded this message on 10/18/2022 4:35 PM.

Good afternoon,

Per PWS 3.17.2.1, I have already provided concurrence for this training to
be conducted in-person and at the location - Robins AFB - recommended by the
Contractor PM. Additionally, within 10 days of employee returning from the
trip, will need a report summarizing what was accomplished during the trip,
any issues, and challenges encountered, and any needed recommendations.
Based on the travel dates below, the report would be due by COB, Monday, 28
NOV.

Thanks,

Katie Doyle, MS, CWP
Civilian Wellness Program Manager
HQ AFMC/SGPO
Wright-Patterson AFB, OH 45433
DSN 312-787-6447 (Comm: 937-257-6447)
Cell 937-623-7014

*Privacy Notice: Use or disclosure of information contained on this sheet to anyone outside of the contracting office is unauthorized.*   13



## 2.0 Inconsistency in flexible solutions for fingerprints

June 2nd – "The process is always that the courtesy fingerprints need to be completed at the location of the position." Millennium incurred fees in flying HPC to Luke AFB for the finger print appointment, she had to take time off of her existing position – loosing pay over the weekend to accommodate a flight, when she could have scheduled the appointment at Fort Carson or Peterson.

From: Angela Owen <aowen@millenniumenterprises.net>
Sent: Thursday, June 2, 2022 6:04 PM
To: Heather Collins <hcollins@millenniumenterprises.net>;
jennifer.d.archer2.ctr <jennifer.d.archer2@mail.mil>
Cc: DOYLE, KATIE M NH-03 USAF AFMC/SGPO <katie.doyle.1@us.af.mil>
Subject: [URL Verdict: Unknown][Non-DoD Source] RE: Fingerprint Appointment (Mendelson)

Good evening again!  After a follow-up conversation with Chloe, she clarified that she is in Colorado until the end of June.  Is it possible for the fingerprints to be done at Fort Carson or Peterson AFB?

Respectfully,

Angela Owen

HR Director

From: DOYLE, KATIE M NH-03 USAF AFMC/SGPO <katie.doyle.1@us.af.mil>
Sent: Thursday, June 2, 2022 8:59 PM
To: Angela Owen <aowen@millenniumenterprises.net>; Heather Collins <hcollins@millenniumenterprises.net>; jennifer.d.archer2.ctr <jennifer.d.archer2@mail.mil>
Subject: RE: Fingerprint Appointment (Mendelson)

Hello,

The process is always that the courtesy fingerprints need to be completed at the location of the position. The email provided by the security manager clearly stated the location for the prints at Luke AFB so not sure why initially she confirmed with you that she could make the appointment to later rescind.

Katie Doyle, MS, CWP

Civilian Wellness Program Manager

HQ AFMC/SGPO

Wright-Patterson AFB, OH 45433

DSN 312-787-6447 (Comm: 937-257-6447)

Cell 937-623-7014

June 3rd – The day after stating the fingerprint process, the Government Program Manager made a fingerprint appointment for HPC Randolph at Youngstown Air Reserve *(not the location of the position)*. While the day before she communicated that "The process is always that the courtesy fingerprints need to be completed at the location of the position."



*Privacy Notice: Use or disclosure of information contained on this sheet to anyone outside of the contracting office is unauthorized.*

**MILLENNIUM**
health & fitness

### 3.0 Lack of start-up readiness at expansion sites

Many sites were staffed in April, and while they were staffed for many months some sites did not even receive office spaces until the last week in September (5 months of not having an office, a computer, a phone, etc.). This lack of readiness caused multiple new hires to resign. Many team members that have resigned as well as current team members have stated that they feel that the lack of start-up readiness negatively impacted the appearance and the success of the program and made them feel like there was no one locally to assist and no one from HQ supporting and meeting their needs.

Millennium communicated site concerns with both the COR/Government Program Manager and the Millennium Program Manager on several occasions. One most recent was Wednesday, September 14th.

Wednesday, 9/14/2022 – Email from COR/Government Program Manager directing Millennium to provide our phone lines via our phone app, issuing them temporary computers and even directing us to set up computers with her recommended generic login. Note: this is not a part of the statement of work for Millennium to provide this equipment.

-----Original Message-----
From: DOYLE, KATIE M NH-03 USAF AFMC AFMC/SGPO <katie.doyle.1@us.af.mil>
Sent: Wednesday, September 14, 2022 12:26 PM
To: Archer, Jennifer D CTR (USA) <jennifer.d.archer2.ctr@health.mil>;
Heather Collins <hcollins@millenniumenterprises.net>
Subject: RE: Expansion site status check
Importance: High

Hello,

Thank you for the summary status check.

What is the timeline for orders being placed and items arriving at the sites? The minimums are a contract requirement and we've allowed leniency on this item with some expansion sites being stood up faster than others and wanting to minimize ordering with everyone on different timelines for operating, but most sites have needed these items for sometime and certainly to have things onsite and organized for the start of the FY. I would prioritize brochures that are needed for educational purposes during wellness screenings and the lower end program visibility incentives for health fairs, etc. over other items. Please let me know by COB on Friday the status of the incentive items and educational brochures being ordered and estimated delivery at the installations.

For the COMMs, I have already contacted several bases this week about these items but will continue to work on this as much as I can from my end. I know Jenny is having several bases work some of this locally as well to get us some updates. In the meantime, what are the options for those without a printer or no color printing? For phones and computers, let's put in place by COB on Friday the app for personal phones you mentioned and a temporary corporate laptop/generic email per site for anyone that will still be without those for some time. Is it possible to set up the laptops with a general site login/email something along the lines of 'KirtlandCHPS@...' or 'CHPS.Kirtland@....', etc.?

Thanks,

Katie

Civilian Wellness Program Manager
HQ AFMC/SGPO
Wright-Patterson AFB, OH 45433
DSN 312-787-6447 (Comm: 937-257-6447)
Cell 937-623-7014

**MILLENNIUM**
health & fitness

## 4.0 Recruiting

5/12/2022 – COR/Government Program Manager Challenges Millennium regarding hiring selections

**From:** Thompson, Sarah N CTR (USA) <sarah.n.thompson21.ctr@mail.mil>
**Sent:** Thursday, May 12, 2022 12:27 PM
**To:** Doyle, Katie M CIV USAF (USA) <katie.doyle.1@us.af.mil>
**Cc:** jennifer.d.archer2.ctr <jennifer.d.archer2.ctr@mail.mil>; Heather Collins <hcollins@millenniumenterprises.net>; Angela Owen <aowen@millenniumenterprises.net>
**Subject:** Nellis HPC Candidate

Hello Katie,

Please see the attached resume for Michele Deckard, Nellis HPC candidate.

We have completed first and second round interviews and we think that Michele is the best fit for the position. Michele has worked in the health and wellness field for 30 years. She has a passion for helping people and has done this through her positions as a health coach and through personal training. Michele is a retired veteran and has worked on base with victim advocacy (not on her resume), she even talked about presenting at a newcomers briefs while she was with the program. She did well with her health education presentation. We were able to get a good sense of her personality and we think that Michele would do a great job with program outreach. When answering the question about developing a list of contacts she talked about the importance of networking and word of mouth, which is a key way we market the CHPS program. We also think that Michele's experience and outgoing personality would be good for the current health promotion specialist. When hiring Marcy we knew she was "green" and more soft spoken. We think that Michele would do a great job of training her and giving her the confidence to grown in her position. Please let me know if you have any questions!

V/R,

Sarah Thompson, AF CHPS Associate Program Manager, CTR
Millennium Health and Fitness

On assignment with:
Civilian Health Promotion Services
8941 Entrance Road A - Building 3334 Room 123
Tinker AFB, OK 73145

Office: (405) 582-6820



**From:** Angela Owen <aowen@millenniumenterprises.net>
**Sent:** Thursday, May 12, 2022 12:50 PM
**To:** Heather Collins <hcollins@millenniumenterprises.net>; Thompson, Sarah N CTR (USA) <sarah.n.thompson21.ctr@mail.mil>; DOYLE, KATIE M NH-03 USAF AFMC AFMC/SGPO <katie.doyle.1@us.af.mil>
**Cc:** jennifer.d.archer2.ctr <jennifer.d.archer2.ctr@mail.mil>
**Subject:** [URL Verdict: Neutral][Non-DoD Source] RE: Nellis HPC Candidate

Good afternoon! I spoke with Michele Deckard and she has verbally accepted. I will be preparing the offer letter and sending it over to her.


Respectfully,

Angela Owen
HR Director
Millennium Enterprises
EMAIL: aowen@millenniumenterprises.net

COR/Government Program Manager upset that the individuals resume was not sent to her to review prior to selection.

**From:** DOYLE, KATIE M NH-03 USAF AFMC AFMC/SGPO <katie.doyle.1@us.af.mil>
**Sent:** Thursday, May 12, 2022 1:08 PM
**To:** Angela Owen <aowen@millenniumenterprises.net>; Heather Collins <hcollins@millenniumenterprises.net>
**Cc:** jennifer.d.archer2.ctr <jennifer.d.archer2.ctr@mail.mil>; Thompson, Sarah N CTR (USA) <sarah.n.thompson21.ctr@mail.mil>
**Subject:** RE: Nellis HPC Candidate

Hello,

I am very confused. With this location and others, I had specifically requested to see any resumes that you were considering for a 2nd round interview/possible hiring because of the issues we have had. I am not sure why the individual was contacted with an offer when the email sent to me wasn't a recommendation but an update on current status to provide the customer with an update.

Katie Doyle, MS, CWP
Civilian Wellness Program Manager
HQ AFMC/SGPO
Wright-Patterson AFB, OH 45433
~~DSN 312 787 6447 (Comm: 937 257 6447)~~
Cell 937-623-7014

**MILLENNIUM** health & fitness

**From:** Heather Collins <hcollins@millenniumenterprises.net>
**Sent:** Thursday, May 12, 2022 2:06 PM
**To:** Thompson, Sarah N CTR (USA) <sarah.n.thompson21.ctr@mail.mil>; DOYLE, KATIE M NH-03 USAF AFMC AFMC/SGPO <katie.doyle.1@us.af.mil>
**Cc:** jennifer.d.archer2.ctr <jennifer.d.archer2.ctr@mail.mil>; Angela Owen <aowen@millenniumenterprises.net>
**Subject:** [URL Verdict: Neutral][Non-DoD Source] RE: Nellis HPC Candidate

Good Afternoon Katie,

I tried calling you back and received your voicemail. I will be available at 2:30pm after my 2pm call if you would like to discuss further.

==Based on the email that Sarah provided the candidate had already went through 2nd round interviews, which we interpreted as recommendation for hire.== Are recommendations for hire now coming through you as the COR or are selections after 2nd round interviews influenced based on your review?

Respectfully,

Heather Collins
Chief Operations Officer
Millennium Enterprises
EMAIL: hcollins@millenniumenterprises.net

Follow up email from Millennium COO confirming that the COR/Government Program Manager understands as that the Millennium Program Manager and Millennium Associate Program Manager have the authority to make a selection without the COR/Government Program Manager review, feedback and influence, since this is not a personal services contract.

**From:** Heather Collins <hcollins@millenniumenterprises.net>
**Sent:** Thursday, May 12, 2022 4:53 PM
**To:** DOYLE, KATIE M NH-03 USAF AFMC AFMC/SGPO <katie.doyle.1@us.af.mil>
**Cc:** jennifer.d.archer2.ctr <jennifer.d.archer2.ctr@mail.mil>; Angela Owen <aowen@millenniumenterprises.net>; Thompson, Sarah N CTR (USA) <sarah.n.thompson21.ctr@mail.mil>
**Subject:** [URL Verdict: Neutral][Non-DoD Source] RE: Nellis HPC Candidate

Good Afternoon Katie,

I wanted to follow up from our conversation to close the loop. ==You are expecting to receive the candidates resumes prior to the 2nd round interview being conducted.== Once second round interviews have concluded and a candidate identified from Jenny or Sarah as PM/APM, Millennium will proceed with offering the selected candidate, without additional feedback or influence on why they made a selection.

As you mentioned on the call, ==as the vendor Jenny and Sarah have the authority to make a selection without your review, feedback and influence,== since this is not a personal services contract. However, we have mutually agreed of the benefit in having you review the resumes of HPC candidates that Jenny and Sarah have objectively scored prior to them moving on to the second round of interviews. From our end we know that both Jenny and Sarah take great care and pride in interviewing and selecting candidates for the program and we fully trust their decisions in the selections. We know that they are fully looking at all details of the selection to ensure the candidate is the best for the program, the site and the position they will be supporting.

Looking forward to the team selecting some amazing candidates to continue to perpetuate this program, its successes and overall impact to the AF civilian workforce population.

Respectfully,

Heather Collins
Chief Operations Officer
Millennium Enterprises

6/2/2022 – COR/Government Program Manager requesting Friday emails detailing the recruiting work done by Millennium to fill a vacancy (date posted to indeed, links verifying posting, dates candidates submitted to Millennium Program Manager for review, interview details, etc.). Also requesting information in regard to the 70+ job boards to which Millennium posts jobs for compliance with EEOC, Vets 100, and the DOL requirements. This weekly report is not a requirement of the PWS rather is an additional requirement that the COR/Government Program Manager imposed on Millennium.





Recruiting HQ APM Position.

Multiple qualified individuals were submitted and interviewed with multiple qualified selections made by the Millennium Program Manager and team. Millennium prepared to make an offer(s); however, the COR/Government Program Manager did not approve of the candidates or selections. Millennium was told that this position located at Wright Patterson HQ was the COR/Government Program Manager's team and that she would make the selection.

In certain instances, the COR/Government Program Manager would provide specific guidance that she would accept a delay in selecting a candidate see below email of an instance where she authorizes an extension to accommodate her preference in selection.

12/16/2022 – COR/Government Program Manager – acknowledging the time it will take to backfill the HQ APM position.



*Privacy Notice: Use or disclosure of information contained on this sheet to anyone outside of the contracting office is unauthorized.*



*Privacy Notice: Use or disclosure of information contained on this sheet to anyone outside of the contracting office is unauthorized.*

20

**MILLENNIUM** health & fitness

## 5.0 Evaluations of Team Members

As a vendor we appreciate the input from the government identifying areas of improvement for team members, however it is not appropriate to guide, lead or request HR actions. See below email where the COR/Government Program Manager requested a PIP be conducted.

**Ron Jackson: 3/24/2021** – Millennium PM responded stating preference to put on formal warning verse PIP, which the COR/Government Program Manager requested.

**From:** Archer, Jennifer D CTR (USA) <jennifer.d.archer2.ctr@mail.mil < Caution-Caution-mailto:jennifer.d.archer2.ctr@mail.mil < Caution-mailto:jennifer.d.archer2.ctr@mail.mil %3c Caution-Caution-mailto:jennifer.d.archer2.ctr@mail.mil > > >
**Sent:** Wednesday, March 24, 2021 9:03 AM
**To:** Tessie Morton <tmorton@millenniumenterprises.net < Caution-Caution-mailto:tmorton@millenniumenterprises.net < Caution-mailto:tmorton@millenniumenterprises.net %3c Caution-Caution-mailto:tmorton@millenniumenterprises.net > > >; Heather Collins <hcollins@millenniumenterprises.net < Caution-Caution-mailto:hcollins@millenniumenterprises.net < Caution-mailto:hcollins@millenniumenterprises.net %3c Caution-Caution-mailto:hcollins@millenniumenterprises.net > > >
**Subject:** RE: Edwards- Weekly Round Up

Hello,

I was thinking about this. What do you all think about just giving Ron a formal warning now? That way he doesn't get hit with a PIP "out of nowhere". Then, if things continue the way they are/have been, we could put him on a PIP. Maybe after the site visit, depending on how things go, if we find out anything, etc. Let me know your thoughts.

V/R,

Jennifer Archer, AF CHPS Program Manager, CTR
Millennium Health and Fitness

On assignment with:
Civilian Health Promotion Services
8941 Entrance Road A - Building 3334 Room 123
Tinker AFB, OK 73145

Office: (405) 582-6278

4/15/2021 - COR/Government Program Manager providing additional details to incorporate into the employees PIP.

**From:** DOYLE, KATIE M NH-03 USAF AFMC AFMC/SGPO katie.doyle.1@us.af.mil
**Sent:** Thursday, April 15, 2021 6:18 AM
**To:** Sherry Morton smorton@millenniumenterprises.net
**Cc:** HOLL, JUDITH A CIV USAF AFMC HQ AFMC/SGPO judith.holl@us.af.mil
**Subject:** RE: Ron PIP-Draft

Good Morning,

Thank you for the update. I know there is a lot of careful thought going into the PIP to make sure it is a thorough document.

I did recall an additional incident that we did not discuss yesterday. It was from several weeks ago when Ron brought to Jenny's attention of an initiative coming from his Community Action Team where he had overpromised CHPS services not in align with our scope/eligibility rules and had not brought this collaboration through his chain of command for guidance and approval. Just another example of disregard for the way CHPS works and ignoring procedures and the chain of command. Thought I would send this now in case helpful.

Katie

Katie Doyle, MS, CWP
Civilian Wellness Program Manager
HQ AFMC/SGPO
Wright-Patterson AFB, OH 45433
DSN 312-787-6447 (Comm: 937-257-6447)
Cell 937-623-7014

*Privacy Notice: Use or disclosure of information contained on this sheet to anyone outside of the contracting office is unauthorized.*

21



Ron Jackson: COR/Government Program Manager asking if it is corporate policy to allow a rebuttal.

**From:** DOYLE, KATIE M NH-03 USAF AFMC AFMC/SGPO <katie.doyle.1@us.af.mil>
**Sent:** Monday, April 26, 2021 12:56 PM
**To:** Sherry Morton <smorton@millenniumenterprises.net>; Heather Collins <hcollins@millenniumenterprises.net>
**Cc:** HOLL, JUDITH A CIV USAF AFMC HQ AFMC/SGPO <judith.holl@us.af.mil>
**Subject:** RE: Follow UP from Meeting 4/23/21

Good afternoon,

In terms of the issues at Edwards CHPS and Ron with his PIP, is this a corporate policy you've updated with adjusting PIP requirement suspense's based on the employee rebuttal? I have not known this to happen in the past, for example with Sara Carros at WP. I am also not sure if you noticed but the email Ron sent with the marketing plan was sent on Saturday morning. Per section 2.5 of the PWS, this is in direct violation of the contract and should be grounds for immediate HR action/dismissal. Unless I have provided government permission as the COR, staff are not permitted to take government property off site nor work outside of the core hours as required per the contract. We had previously discussed this issue where Ron is concerned and it wasn't included on his PIP due to your comments that it hadn't been a problem since 01 FEB, and that he had been counseled on such.

As for the marketing plan, this is not a complete product. Although the tasks listed are valid and all sites should be doing, it is just a static list without information about what the site is actually doing to enact these things. What is your plan for holding him accountable to this plan? Additionally, the program as a whole is not failing, the Edwards site is failing. This is where Jenny and I as program SME's can discuss a way forward versus 'punishing' all of the sites to formalize their processes when the majority of them do not have these issues. Right now, Edwards needs to be the focus with these formalized procedures to help correct their failing site and hold them accountable to improving performance and management at the site.

If you'd like to get on a call to discuss your corporate PD position with CHPS and Ron's PIP, that is fine. We have availability this afternoon, but are unavailable all day tomorrow.

Thanks,

Katie

Katie Doyle, MS, CWP
Civilian Wellness Program Manager
HQ AFMC/SGPO
Wright-Patterson AFB, OH 45433
DSN 312-787-6447 (Comm: 937-257-6447)
Cell 937-623-7014



**Trace Bradley: 3/2/2022** – COR/Government Program Manager expressing concerns that she has no onsite support and her review of Trace Bradley's performance.



Trace Bradley: 3/2/2022 – Millennium Program Manager, indicated she felt that Trace Bradley was not trained properly and did not fully understand his role. She did not think it was appropriate to provide a PIP rather additional coaching and training that was not provided to him initially.

From: Heather Collins
Sent: Wednesday, March 2, 2022 2:41 PM
To: jennifer.d.archer2.ctr <jennifer.d.archer2.ctr@mail.mil>
Subject: FW: Trace at WP CHPS

Hi Jenny,

Thank you for talking with me to better understand Trace's performance and the concerns outlined below. Based on our conversation, you feel that Trace has not been trained properly by his prior leadership (Mandy) and that his performance is a direct reflection of perhaps his lack of understanding of the program. I concur with your next steps for Trace in re-training him into his role (alongside Sierra), allowing him time to train with the site level staff to learn the program at another level, and to have him scheduled for BSDI training. In addition to the training, we both agreed that outlining Trace's deliverables to be able to better manage and evaluate his performance (including the training components as deliverables) would be the next steps. After you have outlined the deliverables that you are aware of lets work to schedule a time to review these with Katie to ensure we are capturing all expectations from her as well. Once we have all deliverables and expectations outlined we can review with Trace and begin monitoring his performance.

When do you think you could have a draft of his deliverables and expectations outlined?

Respectfully,

Heather Collins
Chief Operations Officer
Millennium Enterprises
EMAIL: hcollins@millenniumenterprises.net
Corporate Office: 480-758-5115
Direct Office: 602-781-7188



3/9/2022 – 7 days after Millennium Program Manager gave recommendation to issue a verbal warning, the COR/Government Program Manager requests a PIP for Trace Bradley.

---

**From:** DOYLE, KATIE M NH-03 USAF AFMC AFMC/SGPO <katie.doyle.1@us.af.mil>
**Sent:** Wednesday, March 9, 2022 6:45 AM
**To:** Sherry Morton <smorton@millenniumenterprises.net>
**Subject:** RE: Conference Follow Up

Hi Sherry,

With things opening up for ease of access, travel, etc., we can definitely look to have an in-person annual debrief/planning session this year.

For the workplace wellness training, this pertains to the corporate wellness/health promotion training that the staff need. Mandy had started this project, but it wasn't translating into the exact product we were envisioning (i.e. using CDC training templates as outline). I am researching and reviewing some other options that would be sustainable for the staff for us having an in-house product. Additionally, I mentioned to Heather the NWI programs as Greg and I have found them to be highly comprehensive and high-quality. However, I found that NWI has undergone significant changes over the past few years and doesn't offer as many applicable certification or certificate programs anymore. They still have a Worksite Wellness Specialist Certificate Course level that Jenny might find helpful for professional development with her role in the program: https://cdn.ymaws.com/members.nationalwellness.org/resource/resmgr/worksite/CWWS-Objectives.pdf

For the HQ SPM deliverables sheet you provided, many of these items will be moved to oversight of the HQ APM once they start and are trained so not sure what your plan is for task division as that time. Some other concerns would have are having Trace involved with APM training. The APM position has a very different level of responsibility with support they provided on the management team, and the difference in training is related to tasks not overall program training. Trace has already gone through all program trainings as a site specialist – something the APM wouldn't not be doing as extensively, though would want them to spend some time observing with the Tinker CHPS team when they travel for training with Jenny and Sarah as well as some additional observation time at the WP CHPS office. Additionally, there has not been any Air Force sided CHPS tasks directed to Trace for support and the government does not oversee or supervise any staff. Additionally, not really understanding the merit of a weekly debrief with me to provide any assistance in this situation. I am sure there may be some questions during tasks Jenny/Sarah have provided where I can answer basic questions on or provide background for (e.g. quarterly CAT/CAB slides), but I do not check progress or document workload the your team has assigned to him. ==I think direction more similar to a PIP would be better warranted in this situation where assignments given are very prescriptive with a final due date, regular check-ins with Jenny/Sarah or others on the management team dependent on the task, etc., and documentation of meeting those timelines, the quality of the work, etc.==

Katie Doyle, MS, CWP
Civilian Wellness Program Manager
HQ AFMC/SGPO

---

| Manpower Actions - In Progress | | | | |
|---|---|---|---|---|
| **Updated 4.1.22** | | | | |
| Date | Status | Location | Position Type | Progress Notes/Current Status |
| RESIGNATIONS/TERMINATIONS | | | | |
| 3/28/22 | CLOSED | HQ Wright-Patt | SPM | Trace Bradley | 3/28 - HQ SPM terminated. Will not backfill at this time. |

**Sierra Rankin: 6/20/2022** – 30 Day Performance Review - Millennium PM and WP HPC evaluated Sierra's performance and noted "Sierras overall performance level meets the job requirements as expected."

7/22/2022 11:58am – Millennium PM provided 60-day evaluation notating "Sierra is on track to meet 90 day expectations."

7/22/2022 2:11pm – Millennium PM submitted a revised 60 day evaluation after influence of the Government Program Manager in regard to Ms. Rankin's performance.



Based on Millennium's understanding of the support Sierra was providing she was meeting expectations but was targeted due to her pregnancy and her request to telework based on her doctors recommendations.

### 6.0 Requests for firing, removal from contract, and/or elimination of position/ transfer of duties to another existing position on contract (advancing individual).

8/19/2020 – APM position transitioned to Tinker AFB.

**From:** Heather Collins <hcollins@millenniumenterprises.net>
**Sent:** Wednesday, August 19, 2020 10:50 AM
**To:** HOLL, JUDITH A CIV USAF AFMC HQ AFMC/SGPO <judith.holl@us.af.mil>; DOYLE, KATIE M NH-03 USAF AFMC AFMC/SGPO <katie.doyle.1@us.af.mil>
**Cc:** Sherry Morton <smorton@millenniumenterprises.net>; Tessie Morton <tmorton@millenniumenterprises.net>; ARCHER, JENNIFER D CTR USAF AFMC 72 AMDS/SGPZ <jennifer.archer.4.ctr@us.af.mil>
**Subject:** [Non-DoD Source] Transition of APM Position to Tinker

Good Morning Judy and Katie!

As a follow up to our meeting yesterday I wanted to provide you with a timeline for when notifications will be made of the APM position transitioning to Tinker.

August 28th, 2020- Kaelynn Studebaker will be notified at 0830 EDT (0630 Kaelynn's arrival) that the APM position will be transitioning to Tinker AFB effective September 1st, 2020 and her last day will be effective immediately.

August 28th, 2020 – Tessie and Jenny will conduct a staff meeting at 0700 with all Hill staff to inform them of the change.

August 28th, 2020 – Tessie and Jenny will contact other management team staff members to notify them of the position change.

September 1st, 2020- Sarah Thompson will begin in her new role as the APM at Tinker AFB.

Next steps:
- Can you notify the site POC at Hill to let them know that this transition will be taking place? Please make sure that he/she is aware that Kaelynn will not be notified until Friday, August 28th at 0630.
- Government issued property: will the POC collect this or will another designated federal representative be available to collect her government issued property?
- Escort: Please advise if the POC recommends to escort Kaelynn off the base since she will no longer have a CAC card.

Respectfully,

Heather Collins
Chief Operations Officer
Millennium Enterprises



7/26/2022 – COR/Government Program Manager request for APM removal of contract.



CHPS - personnel change request

DK  DOYLE, KATIE M NH-03 USAF AFMC AFMC/SGPO <katie.doyle.1@u
To  ● Heather Collins; ● Sherry Morton                              Tue 7/26/2022 8:22 PM
Cc  ● Angela Owen; ○ jennifer.d.archer2.ctr; ○ CHADWICK, GREGORY P NH-03 USAF AFMC HQ AFMC/SGPO
Signed By  There are problems with the signature. Click the signature button for details.

Good evening,

The government requests the removal of Sierra Rankin from the CHPS program,
due to inability to perform job duties per contract requirements.

V/r,

Katie Doyle, MS, CWP
Civilian Wellness Program Manager
HQ AFMC/SGPO
Wright-Patterson AFB, OH 45433
DSN 312-787-6447 (Comm: 937-257-6447)
Cell 937-623-7014

*Privacy Notice: Use or disclosure of information contained on this sheet to anyone outside of the contracting office is unauthorized.*

**MILLENNIUM** health & fitness

## 7.0 Double tapping existing team members rather than backfilling vacant positions.

**SPM – Hill AFB > duties transferred to HPC at Eglin AFB.**

**From:** DOYLE, KATIE M NH-03 USAF AFMC AFMC/SGPO <katie.doyle.1@us.af.mil>
**Sent:** Monday, November 15, 2021 10:21 AM
**To:** ARCHER, JENNIFER D CTR USAF AFMC 72 AMDS/SGPZ <jennifer.archer.4.ctr@us.af.mil>
**Cc:** Heather Collins <hcollins@millenniumenterprises.net>
**Subject:** RE: SPM Amanda Jones - Resignation

Good Morning,

I thought through some potential options for how we move forward with the expansion tasks Amanda was going to be managing, and I've stuck on one in particular based on our current staff and who could best support this role/tasks associated with the unstaffed sites. What are your thoughts with utilizing Kim at Eglin for the unstaffed sites like how we have double-tapped Michele at Robins with training?

- SPACE: Based on what I recall from pictures of their current office location, they would likely have capacity for an additional specialist for their team to help with onsite services with an increased to Kim's administrative responsibilities. Possibly the specialist could be less than 40 hpw depending on what Kim feels the site needs.
- WORKLOAD: The list of unstaffed sites looks pretty daunting on paper, but in reality there would be a regular battle rhythm for sending them messaging to disseminate to their workforce that is similar to how the onsite locations utilize their local POC's for the same. Kim would also work with each unstaffed site POC individual for scheduling any virtual services they were wanting to offer as well as scheduling travel team visits.
- TRAVEL TEAM LOGISTICS: The travel team logistics would still be housed out of WP with that team supporting packing up all needed equipment, supplies, incentives, educational materials, etc. and travelling with 1-2 others for those visits. Kim would be welcome to be one of the travelers, but would not need to go on the trips in the majority of cases.

Let me know what you think. I'm happy to get on a quick call to discuss further if you'd like before discussing with Kim to see if she's interested and if her site could house an additional staff person.

Thanks,

Katie

Katie Doyle, MS, CWP
Civilian Wellness Program Manager

**Tinker HPC > Advancing to an HPC + AND HPS being advanced to an HPS+**

**MILLENNIUM**
health & fitness

-----Original Message-----
From: Heather Collins <hcollins@millenniumenterprises.net>
Sent: Thursday, July 28, 2022 1:49 PM
To: DOYLE, KATIE M NH-03 USAF AFMC AFMC/SGPO <katie.doyle.1@us.af.mil>
Cc: jennifer.d.archer2.ctr <jennifer.d.archer2.ctr@mail.mil>
Subject: [URL Verdict: Neutral][Non-DoD Source] Tinker HPC +

Good Afternoon,


Wanted to check in to see if there is any news on what we discussed
yesterday regarding advancing the HPC at Tinker to an HPC +, advancing a HPS
to an HPS+ and adding a new HPS position at the site. We are prepared to
reach out to make offers to the internal team and post the job ad for the
new position when you let us know.


Thanks in advance!


Respectfully,


Heather Collins

Chief Operations Officer



RE: Tinker HPC +

 DOYLE, KATIE M NH-03 USAF AFMC AFMC/SGPO <

To ● Heather Collins

Cc ○ jennifer.d.archer2.ctr

Signed By   There are problems with the signature. Click the signature button for details.



Mon 8/1/2022 9:04 PM

Hi Heather,

Thank you for the updates. I am absolutely okay with Joyous moving into this
new role immediately. This transitions the HQ APM into a joint role for
Joyous as a site HPC plus operations/programs support for the team.
Additionally, we will add a site specialist position to Tinker AFB in order
to keep the site functioning at peak capacity, thereby maintaining our total
# of positions. Please begin advertising for this position as soon as
possible.

Thanks,

Katie Doyle, MS, CWP
Civilian Wellness Program Manager
HQ AFMC/SGPO
Wright-Patterson AFB, OH 45433
DSN 312-787-6447 (Comm: 937-257-6447)
Cell 937-623-7014


-----Original Message-----
From: Heather Collins <hcollins@millenniumenterprises.net>
Sent: Monday, August 1, 2022 5:55 PM
To: DOYLE, KATIE M NH-03 USAF AFMC AFMC/SGPO <katie.doyle.1@us.af.mil>
Cc: jennifer.d.archer2.ctr <jennifer.d.archer2.ctr@mail.mil>
Subject: [URL Verdict: Neutral][Non-DoD Source] RE: Tinker HPC +

Katie,

We were able to meet with Joyous and she is very interested in supporting
the HPC+ position. Are you ok with her beginning in this role effective
immediately? Can you submit the official request to add the HPS position to
Tinker and we will get this position posted as soon as possible?

*Privacy Notice: Use or disclosure of information contained on this sheet to anyone outside of the contracting
office is unauthorized.*



## 8.0 HR Requirements

Millennium has taken on the PWS 2.6.9.2 in contacting the individuals and working with them directly to supply the e-QIP, finger printing, etc. rather than this being conducted by the COR as stated in the PWS 2.6.9.2, "New personnel hired on contract shall ***supply required information directly to the Government COR*** and complete required documentation as directed by the authorizing official (e.g. e-QIP, fingerprinting through local IP office, and other forms as required)."





**Fingerprints**

- Inform the new hire that a fingerprint appointment has been scheduled *(Angela)*
  - Nofify Ms. Doyle if new hire can keep the appointment or if reschedule is required *(Angela)*
- Confirm with the new hire that the fingerprints were successfully completed *(Angela)*
  - Notify Ms. Doyle that fingerprints were successfully completed *(Angela)*

**TASS**

- Confirm that the new hire has received the TASS email and clarify expectation to complete TASS information in 24 hours *(Angela)*
  - Notify Ms. Doyle if there is an issue with the TASS or if the new hire did not receive *(Angela)*
- Confirm the new hire has completed of the TASS information *(Angela)*
  - Nofify Ms. Doyle of completion *(Angela)*

**Overall Security Process**

- Develop a simple summary page of all security steps to expect and share with new hires *(Angela)*

Thank you all for your help and support in improving our processes.

Respectfully,

Angela Owen
HR Director
Millennium Enterprises
EMAIL: aowen@millenniumenterprises.net
Corporate Office:  480-758-5115
Direct Office:  602-781-7176
Work Mobile:  602-781-7176
Fax:  480-393-1707

*Privacy Notice: Use or disclosure of information contained on this sheet to anyone outside of the contracting office is unauthorized.*



## 9.0 Unrealistic expectations for new hires during on-boarding

One example (this has happened at least 4 times) of a team member requiring a longer notice period to their current employer after waiting 8wks for the security process, and the response from COR/Government Program Manager "delay noted". Having an unrealistic expectation that new hires are not currently employed and can start the next day, is not realistic. New hires cannot afford to quit their jobs and wait patiently during the security clearance process which can take as long as 8-12wks. We encourage new employees to stay employed and honor their current employer by placing their notice after receiving approval from fingerprints to authorize starting on base.





## 10.0 My Program

**From:** DOYLE, KATIE M NH-03 USAF AFMC AFMC/SGPO <katie.doyle.1@us.af.mil>
**Sent:** Thursday, April 22, 2021 11:12 AM
**To:** Sherry Morton <smorton@millenniumenterprises.net>
**Cc:** HOLL, JUDITH A CIV USAF AFMC HQ AFMC/SGPO <judith.holl@us.af.mil>
**Subject:** RE: Personal Note

Sherry,

I need to call me as soon as you see this message.

I tried calling your work cell and was unable to leave a message as the mailbox is full and no one answered the corporate line.

I have some major concerns about what is going on with my program and need to speak with you about it immediately.

Katie Doyle, MS, CWP
Civilian Wellness Program Manager
HQ AFMC/SGPO
Wright-Patterson AFB, OH 45433
DSN 312-787-6447 (Comm: 937-257-6447)
Cell 937-623-7014

---

**From:** HOLL, JUDITH A CIV USAF AFMC HQ AFMC/SGPO <judith.holl@us.af.mil>
**Sent:** Wednesday, April 21, 2021 6:23 PM
**To:** Sherry Morton <smorton@millenniumenterprises.net>; DOYLE, KATIE M NH-03 USAF AFMC AFMC/SGPO <katie.doyle.1@us.af.mil>
**Subject:** RE: Personal Note

We are in this together... and do know you have the programs best interests at heart....open communication is the key to our co-management... things will settle down soon... judi

*Judith A. Holl, BSN, MPH, COHN-S*
Team Lead, Occupational Health and Wellness
HQ AFMC/SGPO
Wright-Patterson AFB OH 45433
DSN 312-986-3633
Cell 937-271-8750

**MILLENNIUM**
health & fitness

## 11.0    Exit Interviews

Exit interview – team member notating aspects of lack of site readiness.

**On a scale of 1-5, equipped:**
1 – still not in a space where we can offer my services.
Filled time with a lot of sitting and waiting.  Asking people if they heard anything new.  Attending virtual classes from other sites.  Lot of idle time.

**If you could change anything?**

Readiness

Before people start, have a conversation between HQ and the IT base contact under which they would work.  Explain how the contract would work under Med Group or not for example.

The only goal I was given was to try to complete my trainings which would required my AF laptop – which never happened.  And do outreach – but didn't have email or card.

Exit interview – team member notating lack of site readiness (no table, no office, no computer, phone etc.) and discouragement staff member felt to be able to talk to Millennium, quoting that "they were not to communicate directly with Millennium" "the vendor could change at any time".

The classes are outdated.  There is room for growth in the classes.  Some things are more cutting edge and the classes need to be updated.  Even at Tinker, some classes would only have 1 person.  People have heard it before.  People want to hear something fresh.  Have a list and have to choose from the boring list to check a box.

Processes – a bit overcomplicated.  NMI documents – overcomplicated.  Don't allow for creativity. Felt very robotic.

We were hired because of who we are and what we can individually bring.  This is top on the list.

People will work the job for some time and then feel very bored.  We offer 3 services and that is all that you do day in and day out.  Bored.

Not having an office when we started – got passed around with no where to sit.  Would have been nice for someone to have come there and worked it out.

When time to order supplies, I felt like we ordered supplies when we realized we needed things – there should have been a bundle of supplies that the CHPS program needed.  Amazon – request table.  Get it denied.  Then find another.  Had to borrow a table from the fitness center and carry it around every day. These are the things that we know you need.

**How else can we better engage?**
I personally felt as if I needed to reach out to MEI I could but also felt like it was discouraged.
The vendor could change at any time.  The CHPS program is the CHPS program.



### 12.0    Unrealistic expectations

COR/Government Program Manager upset that she was not notified immediately of a resignation, while Millennium was trying to contact the individual to determine what has caused the sudden resignation to determine if there was something that could be done to prevent them from resigning. The total time from when Millennium was notified to when the COR/Government Program Manager was notified was 14minutes (from the time we were notified, we contacted the individual, discussed internally and then notified the COR/Government Program Manager, yet she was extremely upset.

---

**From:** DOYLE, KATIE M NH-03 USAF AFMC AFMC/SGPO <katie.doyle.1@us.af.mil>
**Sent:** Monday, April 18, 2022 8:22 AM
**To:** Heather Collins <hcollins@millenniumenterprises.net>; Sherry Morton <smorton@millenniumenterprises.net>
**Cc:** jennifer.archer.4.ctr@us.af.mil; Angela Owen <aowen@millenniumenterprises.net>
**Subject:** RE: Health Promotion Coordinator-Joshlynn Edwards

I am not understanding why there is a need to ask Jenny to forward me an email versus just adding me to the send list in the first place. While you have to repopulate a job announcement, I have to immediately notify numerous government offices between the security manager and then the installation and MAJCOM POC's with these updates. Just for one installation, I typically have between 3-5 POC's between the office logistics, health promotion, IT departments, and even various levels of local leadership. While today's timeline shows that Jenny was already working and able to forward the information to me quickly, that isn't always the case nor do I think the best use of her time to notify me of high level HR issues.

Katie Doyle, MS, CWP
Civilian Wellness Program Manager
HQ AFMC/SGPO
Wright-Patterson AFB, OH 45433
DSN 312-787-6447 (Comm: 937-257-6447)
Cell 937-623-7014

---

**From:** Heather Collins <hcollins@millenniumenterprises.net>
**Sent:** Monday, April 18, 2022 9:11 AM
**To:** DOYLE, KATIE M NH-03 USAF AFMC AFMC/SGPO <katie.doyle.1@us.af.mil>; Sherry Morton <smorton@millenniumenterprises.net>
**Cc:** ARCHER, JENNIFER D CTR USAF AFMC 72 AMDS/SGPZ <jennifer.archer.4.ctr@us.af.mil>; Angela Owen <aowen@millenniumenterprises.net>
**Subject:** [URL Verdict: Neutral][Non-DoD Source] RE: Health Promotion Coordinator-Joshlynn Edwards

From a time component Joshlynn notified us at 8:24 am. We called her at 8:26 am. Angela emailed Jenny & me at 8:31 am. Jenny forwarded it to you at 8:38 am. 14 min from the time we were notified officially from Joshlynn to when you were notified.

Respectfully,

Heather Collins
Chief Operations Officer
Millennium Enterprises

---



**From:** Heather Collins
**Sent:** Monday, April 18, 2022 9:04 AM
**To:** DOYLE, KATIE M NH-03 USAF AFMC AFMC/SGPO <katie.doyle.1@us.af.mil>; Sherry Morton <smorton@millenniumenterprises.net>
**Cc:** jennifer.archer.4.ctr@us.af.mil; Angela Owen <aowen@millenniumenterprises.net>
**Subject:** RE: Health Promotion Coordinator-Joshlynn Edwards

Good Morning Katie,

Are you referencing the initial email notification from the employee notifying Millennium that they are receding? This typically comes in to Millennium HR or Jenny directly. As soon as we are notified, we are attempting to contact the individual to see if there is something we can do to prevent the decision. As soon as we know anything concrete, we are notifying you immediately.

I apologize for the additional workload that is now impacting you directly. Please know this impacts all of us, as we all have to start over with recruiting, interviewing and onboarding. Unfortunately we have no way of preventing anyone from looking for other jobs and accepting other positions. In all industries everyone is struggling to maintain employees to say on for any length of time. Job hopping is abundant right now, and people are not stopping to find something better, offering more flexibility in schedules, telework, higher pay, etc.

We will reach out to new team members, but there is no guarantee they will not be actively looking for other positions while telling us they are still very interested in this position.



**From:** DOYLE, KATIE M NH-03 USAF AFMC AFMC/SGPO <katie.doyle.1@us.af.mil>
**Sent:** Monday, April 18, 2022 8:45 AM
**To:** Heather Collins <hcollins@millenniumenterprises.net>; Sherry Morton <smorton@millenniumenterprises.net>
**Cc:** jennifer.archer.4.ctr@us.af.mil; Angela Owen <aowen@millenniumenterprises.net>
**Subject:** RE: Health Promotion Coordinator-Joshlynn Edwards

Good Morning,

Is there a reason why I just can't be put on the initial email traffic? Seems like that would save everyone a lot of time and the government should be getting this information in real-time along with the rest of you. This is now an additional mess I need to clean up after the Vandenberg mess last week. The amount of workload that goes into getting one of these new sites ready for operation is massive and now I need to go back and apologize again to another base for doing a lot of work for nothing.

I want you to contact every single new hire on the books that is waiting – whether approved for a start date or not – and find out if they are committed to this job. I cannot keep asking government people to do this amount of work for nothing.

Katie Doyle, MS, CWP
Civilian Wellness Program Manager
HQ AFMC/SGPO
Wright-Patterson AFB, OH 45433
~~DSN 312 787 6447 (Comm: 937 257 6447)~~
Cell 937-623-7014

**From:** Archer, Jennifer D CTR (USA) <jennifer.d.archer2.ctr@mail.mil>
**Sent:** Monday, April 18, 2022 8:38 AM
**To:** DOYLE, KATIE M NH-03 USAF AFMC AFMC/SGPO <katie.doyle.1@us.af.mil>
**Cc:** Heather Collins <hcollins@millenniumenterprises.net>; Angela Owen <aowen@millenniumenterprises.net>
**Subject:** Health Promotion Coordinator-Joshlynn Edwards
**Importance:** High

Hi Katie,

Unfortunately, Joshlynn Edwards, Maxwell-Gunter HPC, has rescinded her acceptance. Her start date was supposed to be 4/21.



## 13.0    Suggestion Email Response from Government Program Manager

HPC submitted suggestion to the web administrator assigned to the Motivation Alliance Account, Katie Doyle (found directly on the website) to offer a suggestion to improve the user experience.

### FW: Suggestion for Motivation Alliance App

**DK**    DOYLE, KATIE M NH-03 USAF AFMC AFMC/SGPO <katie.doyle.1@u    ↩  ↩  →   📧  ···

To  ● Heather Collins; ● Sherry Morton                                              Thu 10:54 AM

Cc  ○ THOMPSON, SARAH N CTR USAF AFMC 72 AMDS/SGPZ

Signed By  There are problems with the signature. Click the signature button for details.    ⚠

ⓘ You replied to this message on 10/20/2022 11:01 AM.

Good Morning,

Can someone reach out to this MEI contractor for CHPS? They shouldn't be emailing me, and certainly not making requests to the Air Force Customer office.

V/r,

Katie Doyle, MS, CWP
Civilian Wellness Program Manager
HQ AFMC/SGPO
Wright-Patterson AFB, OH 45433
DSN 312-787-6447 (Comm: 937-257-6447)
Cell 937-623-7014

-----Original Message-----
From: Scofield, Dennis E CTR (USA) <dennis.e.scofield.ctr@health.mil>
Sent: Thursday, October 20, 2022 10:47 AM
To: DOYLE, KATIE M NH-03 USAF AFMC AFMC/SGPO <katie.doyle.1@us.af.mil>
Subject: Suggestion for Motivation Alliance App

Hello Ms. Doyle,

Just a quick note to see if there has been any attempt to add  "Sleep" under "Logging" in the Motivation Alliance app.  I feel that would be another useful index.

Best Regards,

Dennis Scofield, CHPS Health Promotion Coordinator, CTR Millennium Health and Fitness

On assignment with:
Civilian Health Promotion Services
Ehrling Bergquist Clinic
2501 Capehart Road